In the Matter of the Estate of Eugene C. Noel, Deceased.

Surrogate's Court, New York County, March 28, 1940.

*Lester M. Friedman*, for the executors.

*Walter L. Post*, for the objectant.

*Grace Kelly Santo*, special guardian.

Foley, S. The principal issue in this accounting proceeding involves the disposition of the claim against the estate asserted by Ella C. Noel, the widow of the decedent, for the sum of $7,300. The claim is based upon a separation agreement entered into between the parties by which the husband obligated himself to pay to his wife the sum of fifty dollars per month for her support and for the maintenance of their infant daughter. The defense of the executors is that the wife breached the agreement in a material and important aspect by her refusal to permit the husband to visit his daughter under the privilege accorded to him by its terms and that thereby the husband was relieved of the duty of making the monthly contributions to the wife.

The separation agreement was executed on November 2, 1925. The parties were then living separate and apart from each other. The husband agreed to pay the sum of fifty dollars a month commencing on November 1, 1925. There were other financial arrangements provided in it. By a further provision the wife was given the custody of the daughter. The husband was granted the right

to visit the daughter upon specified days in each week. Such right of visitation contemplated attendance by him at the separate home of the wife. Further provision was made for the continuance of these rights of visitation until May 1, 1926, when a new arrangement was to be made which would provide "for more frequent visits" should the health of the husband improve. No new arrangement under the latter provision was ever entered into between the parties.

It appears from the evidence that the husband paid the monthly installments required of him until August of the year 1926. Controversy then arose between the parties by which the right to visit the child was refused by the wife and the husband refused to continue to pay the monthly amount. It was apparently claimed by the wife that the physical, mental and nervous condition of the husband had a deleterious effect upon the wife and the daughter and justified the denial of the privilege of visitation granted to him under the agreement. He had contracted an organic disease, known as epidemic encephalitis, which affected his physical appearance. During the period of the controversy and in the month of October, 1926, he procured a writ of habeas corpus in the Supreme Court of Nassau county against his wife with a view towards enforcing his right to visitation of his child. The question of his mental incompetency was raised by the wife. Mr. Justice MITCHELL MAY, who heard the proceeding, then appointed a competent and qualified specialist and neurologist to examine the husband for the purpose of determining his competency. In his report, which is in evidence, he certified that the husband could not be regarded as insane from either a medical or legal standpoint. He further certified that in his opinion the husband "should be allowed to see his child at stated intervals, as I do not believe that he would harm the child in any way." An order was then made by Mr. Justice MAY terminating the proceeding and designating specified days when the father could visit his child. It has been clearly established by the evidence that the wife frustrated the right of visitation granted by the terms of this order.

The surrogate holds as the trier of the facts that the wife, by her refusals both before and after the pendency of the habeas corpus proceeding, breached the separation agreement in a material and important phase and that thereby the husband was relieved of his obligation to pay the monthly installments.

A parallel case directly in point was considered by the Court of Appeals in *Duryea* v. *Bliven* (122 N. Y. 567). There the separation agreement provided that the two children of the parties should remain with the mother, subject to the right of the father to visit

and associate with them, as provided in the contract. The husband was required to pay through a trustee the sum of seventy-five dollars a month for the support of the children. He made the required payments for a short period of time. He refused to make further payments upon the ground that his wife had violated the provisions of the agreement relating to his right of visitation and association with his children. The court said (p. 570):

" The agreement of the wife and trustee to permit the husband to associate with his children was not only valid, but was a material part of the contract which could not be violated by the wife, and a recovery be sustained in her favor for her benefit of the sum which he stipulated to pay monthly.

" On the trial the defendant testified that he was not permitted to see his children except in the presence of third persons, and that they were not allowed to visit him when he was sick. If this was true, and without justification, it was a violation of the contract on the part of the wife, and no recovery could be had for her benefit while she was refusing to perform on her part. A contract of this character is incapable of the exact performance which may be made of a business one, but, nevertheless, both parties are required to attempt to carry it out in good faith. There was a clear conflict in the evidence, and in the inferences to be drawn from it. The defendant testified that on many occasions he was denied the right to associate with his children without any apparent or sufficient reason. The wife and the trustee, by their evidence, denied that some of the refusals occurred, and gave reasons why, in other instances, the children were not present when the father called. Whether the reasons put forward were the real ones, and if real, whether they were sufficient, was a question to be determined by the jury, and the court was not justified in declaring, as a matter of law, that the wife had performed her contract, or that her failure to perform it was justified by the evidence. A question of fact arising upon the evidence as to whether the wife had violated the contract in the respects complained of, it was error to direct a verdict for the plaintiff, for which the judgment should be reversed and a new trial granted, with costs to abide the event."

It will be noted that the Court of Appeals held that the direction of verdict by the trial court in favor of the plaintiff, the trustee, was improper. Moreover, specific instructions were given for the guidance of the triers of the facts upon the new trial as to whether the wife had breached the contract, whether she had refused the husband the right of visitation and whether the reasons advanced for the refusals were the real reasons, and, if real, whether they were sufficient.

In the pending proceeding these instructions of the Court of Appeals have been applied by the surrogate to the evidence here. In my opinion the wife was wholly unjustified in denying to her husband the right of visitation accorded to him by the agreement. Her pretended fear as to his mental condition and the possible danger to herself and to her child were unfounded. Certainly, the determination in the habeas corpus proceeding constituted a strong adjudication against her as to the lack of basis of her alleged reasons for keeping the daughter away from association with her husband. Her contemporary conduct at the time of the commission of the original breach, in August or September, 1926, and her conduct subsequent to the order of the Supreme Court made on January 19, 1927, conclusively show that she acquiesced in a situation whereby she relieved her husband of any duty to contribute the monthly amount for the support of herself and her child as fixed in the separation agreement. After the date of the order of the Supreme Court she made no effort in and after the year 1927, and up to the time of the death of the husband in 1937, to assert any legal right to enforce any pecuniary obligation of support on his part. During that period of ten years she went her own way, earned her own living and was content to support her daughter out of her own resources. She, therefore, yielded her pecuniary advantage under the agreement in order to avoid his visits. The letter which she wrote on March 15, 1932, which is in evidence, is the strongest confirmation of her prior action in relieving her husband of any liability for support. In it she said: " I have done my end well, and *alone*, and I have nothing to talk over or have an interview about, and no agreements to consider." (Italics hers.) Moreover, the contents of this letter and the independent proof of her conduct also show that at a time when she might have insisted upon the payment of her monthly allowance she herself was paying interest on a mortgage she had upon the property of her husband and which had been assigned to his brother for convenience only. Far from asserting her right to support, she expressly waived it by the payment of an accruing pecuniary obligation due her husband or his agent in the form of the interest on the mortgage.

The surrogate is compelled to reject the testimony of the attorney for the claimant that he made several efforts to collect the monthly installments for support after the date of the Supreme Court order in 1927, or that the unsatisfactory financial condition of the husband prevented the bringing of an action. The testimony of the attorney is nullified by his own letter dated January 31, 1930, which was addressed to the husband, wherein the attorney stated that the wife was " unwilling to enter into any arrangement with you for visits at her home."

The rules of law and the conclusion of the Court of Appeals in *Duryea* v. *Bliven* (*supra*) that the denial of visitation relieved the husband of the duty to support under an agreement or a decree awarding alimony with conditions for the right of visitation, have been followed in subsequent authorities. (*Silkworth* v. *Silkworth*, 255 App. Div. 226; *Ambrose* v. *Kraus*, 256 id. 933; *Swanton* v. *Curley*, 273 N. Y 325; *Harris* v. *Harris*, 197 App. Div. 646.) Moreover, other decisions have applied the rule that where the wife by her own conduct has waived her right to compel contribution by the husband for the support of herself or her children over a period of years, no recovery against him or his estate can be enforced. (*Swanton* v. *Curley, supra; Krotosky* v. *Krotosky*, 169 App. Div. 850; *Matter of Nutrizio*, 145 Misc. 626.)

The claim of the widow, Ella C. Noel, is, therefore, dismissed in its entirety.

The personal claims of the executor and executrix are allowed in the amounts set forth in the account.

The compensation of the attorney for the executor is allowed in the sum of $650, plus disbursements in the sum of $30.12. Costs in the accounting proceeding have been waived by him.

Submit decree on notice settling the account accordingly.