Max J. Wolef, Ref.
This consolidated action was tried before me by consent without a jury. Formal findings were waived.
The plaintiff, who is the defendant’s former wife, sues upon a separation agreement by which the defendant undertook to pay to her in any week in which she earned at least $125 the sum of $25 for the joint support of herself and a child of the marriage; for any week in which the plaintiff did not earn $125 she became entitled under the agreement to $25 for her own support and an additional $25 for the maintenance of the child, with the further provision that if defendant’s earnings should increase to a figure mentioned in the agreement he would then pay for the child $30 a week instead of $25. Involved in this action are payments which fell due between January 1, 1949, and March 24, 1956. At times the plaintiff earned more than $125 a week; sometimes less. In the beginning the defendant’s salary was not large enough to require him to pay the additional $5 a week for the child’s support; later it became so. Although the defendant made many payments, some because he was compelled to do so by an order of the Domestic Relations Court, he nevertheless fell substantially in arrears.
The separation agreement was executed in April of 1948. It provided that in the event an action for divorce be brought by either party against the other 1 ‘ for any reason other than adultery ” “ this agreement will be incorporated in and made *48 a part of any decree which may he granted.” The wife sued the husband in the State of Arkansas on grounds other than adultery. The husband appeared generally in that action, and a decree of divorce was entered in September of 1948 in which it was stated that “ the terms of the said agreement are incorporated in this decree and made a part hereof as if set out word for word herein.” The complaint in the present action contains no reference to the decree of divorce but is based entirely upon the separation agreement. The defendant contends that the separation agreement has been merged in the divorce decree and therefore that the plaintiff may not now sue upon the agreement.
No specific provision was included in this agreement that it should survive a decree of divorce, nor any for its merger therein. Bather, it was stipulated that in the event of the bringing of a suit for divorce ‘ ‘ for any reason other than adultery ” “ the complaint in such action shall seek relief, among other things, to make effective the intention of the parties with respect to the care and custody of the child and the support of the wife and the child, as herein provided. * * * The wife agrees that if she brings such action she will not therein seek to obtain support or maintenance for either herself or the child or the custody of the child that shall in any way be inconsistent with the provisions of this agreement. ’ ’
The agreement in suit resembles in certain pertinent respects an agreement of separation which was tangentially but necessarily considered in Goldman v. Goldman (282 N. Y. 296, 305) where Lehman, Oh. J., said: “We point out here that the direction of the court that the defendant shall pay to the plaintiff a sum less than he agreed to pay does not relieve the defendant of any contractual obligation. The direction of the court may be enforced in manner provided by statute and the plaintiff may still resort to the usual remedies for breach of a contractual obligation if there has been such breach, but we do not now decide whether the parties intended that the contractual obligation of the defendant should survive where the court has modified a direction to the defendant to pay the sum fixed by contract.” There is here no such complication as in the Goldman case inasmuch as the decree in hand did not modify the provisions of the separation agreement. In Fry v. Fry (279 App. Div. 122,123, affd. without opinion 304 N. Y. 889) recovery was allowed upon a separation agreement notwithstanding the subsistence of a Nevada decree of divorce which “ expressly adjudged that the separation agreement was ‘ approved, *49 adopted and confirmed ’, and further directed the parties ‘ to abide thereby and to perform the obligations thereof ’ But there the agreement included a stipulation that it “ would continue in full force and effect ” (304 N. Y. 890) in the event either party should obtain an absolute divorce from the other.
A consideration, for present purposes, of the question of the merger of separation agreements in decrees, or their survival, requires examination of the checkered history of the Bureau litigation, which was before various courts in two separate actions (Sureau v. Sureau, 113 N. Y. S. 2d 56; Sureau v. Sureau, 116 N. Y. S. 2d 91, revd. 280 App. Div. 927, which reversal was affd. without opinion 305 N. Y. 720, where certified questions were answered). In 113 N. Y. S. 2d 56, 57, a majority of the Appellate Term of the Supreme Court, First Department, said: “ The institution of the action in Nevada for a divorce did not constitute a repudiation of the separation agreement. * * * The approval of the agreement of the parties and its inclusion in the decree neither merged nor nullified it. Indeed, incorporation was done pursuant to an express provision of the separation agreement itself. As the decree did not destroy the agreement or deprive the wife * * * of her rights thereunder, she is entitled to resort to the usual remedies for breach of the contractual obligation [citing cases].” In a dissenting memorandum, Hoestadteb, J., said: “Assuming that, even without a stipulation for survival, the agreement may nevertheless survive its adoption in the decree, the question still remains whether the parties here intended that the agreement should be merged in the Nevada decree. If they so intended, the court must give effect to such intention [citing cases]. The terms of the Nevada decree necessarily have a direct and important bearing on this issue. Yet, the plaintiff has not submitted the Nevada decree in support of her motion for summary judgment, and the only light thrown on its terms appears in the affidavits of the attorneys summarizing and interpreting its provisions. I do not think summary judgment can rest on such a flimsy foundation.” The view of the dissenting Judge, to wit, that whether there was an intention to merge the separation agreement in the divorce decree presented a question of fact and hence a triable issue, prevailed in the second of the actions between the same parties, brought to recover subsequent installments under the same agreement (280 App. Div. 927, a 3 to 2 decision, affd. 305 N. Y. 720).
At the trial of the case in hand the divorce decree of the Arkansas court as well as the agreement of separation was received in evidence. There was no oral testimony concerning *50 the intention of the parties, which must therefore be ascertained from the documentary evidence, that is, from the agreement and the decree. The pertinent provisions of the agreement, as hereinabove set forth, do not seem to me to warrant the inference of an intention that it be merged in a later decree. Nor did the decree, by incorporating the agreement, effect a merger; as the Bureau and other eases demonstrate, under New York law it did not obliterate the existing contractual obligations of the parties (cf. in addition to cases hereinabove cited, Hettich v. Hettich, 304 N. Y. 8, 14; Hoyt v. Hoyt, 265 App. Div. 223, 224; and see Statter v. Statter, 2 A D 2d 81, 87). The law of Massachusetts is to the same effect; it has been there held that an agreement which provided for the inclusion, in a decree, of its terms relating to support but did not say that it was to survive the decree nevertheless survived and that parol evidence of a contrary intention was incompetent (Freeman v. Bieve, 323 Mass. 652). Elsewhere the authorities are in conflict (cf. Harris v. Commissioner of Internal Revenue, 340 U. S. 106, 119 120 and n. 4 of dissenting opinion; also, see, 32 A. L. R. 2d 1145 et seq.).
Here it may be thought necessary to look to the law of Arkansas in order to determine the effect of the decree upon the agreement (cf. Matter of Nichols, 201 Misc. 922, 925-926). The rule of that jurisdiction was recently stated by its Supreme Court to be as follows: Our cases hold that where a decree for alimony or support is based on an independent contract between parties which is incorporated in the decree and approved by the court as an independent contract, it does not merge into the court’s award and is not subject to modification except by the consent of the parties. Pryor v. Pryor, 88 Ark. 302, 114 S. W. 2d 700, 129 Am. St. Rep. 102; McCue v. McCue, 210 Ark. 826, 197 S. W. 2d 938; Bachus v. Bachus, 216 Ark. 802, 227 S. W. 2d 439. Although a court of equity may decline to enforce payments due under an independent agreement by contempt proceedings where changed circumstances render such payments inequitable, the wife retains her remedy at law on the contract. Pryor v. Pryor, supra.” (Lively v. Lively, 222 Ark. 501, 502-503.) Thus this action would be maintainable in Arkansas as it is in New York.
The defendant has also interposed an affirmative defense based upon alleged violations of the separation agreement by the plaintiff. It is asserted by the defendant that at various times he was denied the right of visitation of the child. The agreement provided: ‘ ‘ The custody of the child shall be in the wife, provided, however, that she shall reside with the child, except *51 during such times as the child shall be either on vacation or at a boarding school or college. While having the custody of said child, the wife shall reside with the child at such place or places as she may determine to make her home, except that if the wife should change her home from her present address, she shall immediately notify the husband, in writing, of such change of home, and shall thereafter notify the husband, in writing, of each place of residence, whether permanent or temporary, of the child. The husband shall have the right to visit said child one day in each week, at any place of residence, whether temporary or permanent, upon condition, however, that he shall give the wife at least forty-eight hours previous written notice of his desire to see the child. When the child has reached the age of six years, such visit shall either be made at the wife’s place of residence or, at the option of the husband, at his home or the home of his parents, and the wife agrees to permit the husband to take the child for the purposes of such visit to either his home or the home of his parents.” In this connection the defendant also relies upon the following all-inclusive sentence in the agreement: “In the event that either party shall fail to keep, observe and perform the covenants and agreements to be kept, observed and performed by each of them hereunder, * * * he and/or she, as the case may be, at their respective options, shall be free and discharged of any and all obligations hereunder and he points further to the qualifying stipulation, in relation to his undertaking to pay $25 weekly to the plaintiff for her sole maintenance and support (applicable at such times as she would earn less than $125 per week), that these payments are required to be made “ so long as the wife shall fully keep, observe and perform the covenants and conditions to be kept, observed and performed by her under this agreement ”. No such limitation was specifically stated with respect to the defendant’s undertaking in another part of the agreement to pay either $25 per week or $30 per week, depending upon his earnings, “ for the maintenance, support and education” of the child; and similarly no such qualification was expressed in regard to his obligation to pay $25 per week “ for maintenance and support of the wife and child together ” in such weeks as the wife “ shall earn the minimum sum of $125 per week”. However, it is obvious that the agreement should be read as a whole and it is a reasonable inference that the obligations of the wife and the rights of the husband with respect to visitation of the child by the latter were intended to remain the same irrespective of the varying financial obligations of the husband.
*52 These questions present themselves: (1) Did the plaintiff materially breach her agreement to permit the defendant to visit the child one day each week? (2) If so, did such breach terminate all of the plaintiff’s rights under the agreement or did it affect only payments which she would otherwise have been entitled to receive for the period in which the defendant was deprived of his right of visitation? (3) Did such breach destroy the plaintiff’s right to recover not merely those payments which were intended for her sole support but also those stipulated as being in whole or in part for the support of the child?
The plaintiff has undertaken to prove that the defendant knew at the time when the separation agreement was made that it would be necessary for her to travel and from time to time to live at great distances from the city of New York. She points to the fact that the agreement provided for the possibility that her earnings might reach or exceed $125 per week. She testified in substance that when he made this agreement the defendant understood, from his past experience with her and from the nature of her work as a theatrical press agent for road shows, that she could earn such a weekly income only by moving about from State to State, even as far as the west coast. She had occasionally done this, as she showed, even while the parties had lived together. Since it was provided that the wife “ shall reside with the child except during such times as the child shall be either on vacation or at a boarding school or college ”, she contends that in order to perform this part of her contract, that is, to be with the child, she had to take him along wherever her work carried her, regardless of a resultant denial, in practical effect, of the defendant’s right of visitation. She asks the court to construe the agreement, on the basis of her testimony, as one which left her free to keep the child with her anywhere in the country, for extended periods or indefinitely, without loss by her of any benefits thereunder.
There is no satisfactory evidence that the sterotyped sentence in the agreement which permits the parties to ‘ ‘ reside at such place or places ” as “ he or she may deem fit ” was intended to override the specific covenant of the plaintiff that the defendant “ shall have the right to visit said child one day in each week ”. The parties were married and resided in the city of New York until they separated. The defendant has continued to live here and is regularly employed within the city, and this is also the plaintiff’s permanent residence. The separation agreement was executed in the city of New York and it was therein recited that the parties each reside in the said *53 city. At the time when the agreement was made there was no discussion between the parties or their attorneys about the plaintiff’s right to remove the child from this city, either temporarily or permanently. Intention must therefore be gathered from the agreement itself in the light of the surrounding circumstances. The fact that before the separation took place the wife occasionally made business trips to other parts of the country does not persuade me that it was contemplated that this practice should continue to the exclusion of the defendant’s right of visitation, which was not, I think, intended to be enjoyed by him only at such times as the plaintiff chose to remain in or near the city of New York. It is fair to infer that if the parties had intended so drastically to limit that important right they would have so stipulated.
In this view of the case it appears that when the plaintiff took the child to places where it was not practical for the defendant to visit him, as she did at certain times as hereinafter set forth, she materially breached her agreement with the defendant. The most significant breach, indeed the only breach of importance to the decision of this case, occurred when, with the. knowledge of the defendant but in spite of his strenuous, objection, she removed herself and the child to Oklahoma City,, where she had obtained temporary employment. On this occasion the child was brought to Oklahoma City on August 18, 1952, and returned to New York on April 1, 1953, so that for a period of about seven and one-half months the defendant was not able to visit the child.
I am of the opinion that during this period the defendant’s obligations under the separation agreement to support the plaintiff and the child were suspended and that the plaintiff may not recover any of the weekly payments which would otherwise have accrued to her within such time. However, I conclude that the plaintiff’s rights under the agreement were restored to her when she returned the child to the city of New York and that the defendant is therefore liable for weekly payments which became due after April 1, 1953.
A father who is deprived of his visitation rights under a separation agreement need not comply even with those stipulations which relate to the support of the child (cf. Duryea v. Bliven, 122 N. Y. 567; Haskell v. Haskell, 201 App. Div. 414, affd. without opinion 236 N. Y. 635; Haskell v. Haskell, 207 App. Div. 723, affd. without opinion 254 N. Y. 569; Muth v. Wuest, 76 App. Div. 332; Matter of Noel, 173 Misc. 844; Schwartz v. Spergel, 90 N. Y. S. 2d 439, 440-441; and see Morgan v. Morgan, 201 F. 2d 868).
*54 The defendant contends that a material breach of the agreement, such as that which occurred when the plaintiff deprived him of his visitation rights for a period of about seven and one-half months, terminated all future liability on his part. This contenion is not sustained by a close reading of Durver v. Bliven (supra) upon which he relies. The court there said: 1 ‘ On the trial the defendant testified that he was not permitted to see his children except in the presence of third persons, and that they were not allowed to visit him when he was sick. If this was true, and without justification, it was a violation of the contract on the part of the wife, and no recovery could be had for her benefit while she was refusing to perform on her part ” (pp. 570-571, emphasis supplied).
It seems clear that a temporary deprivation of the husband’s right of visitation, even one lasting for seven and one-half months, is not a total frustration of all of the underlying purposes of the normal agreement of separation. When this defendant was for a time denied the opportunity to visit his child he did not thereby suffer a total failure of all of the material considerations for which he had originally contracted. The agreement had limited his liability for the support of the plaintiff and the child to the weekly payments therein specified and at once freed him of all other responsibilities for their debts and expenses. He also derived certain other benefits which, at least before the decree of divorce became effective, presumably were of importance to him, such as the renunciation by the plaintiff of her statutory right of election as surviving spouse. Other considerations mentioned in the agreement accrued to him, although it would not be practical now to attempt to assess their tangible value or relative importance. It is not now possible to undo the agreement and to restore the plaintiff to her original position. In all the circumstances, it is not reasonable that the defendant be permitted to repudiate altogether his covenants relating to support. It is no answer to say that divers provisions of the agreement which are or at one time were beneficial to the defendant are independent of those which relate to visitation and support; distinctions in agreement of this kind between independent and mutually dependant covenants of the respective parties are often unrealistic. It is fair that the defendant be discharged only with respect to those payments which accrued during the time when the child was not available to him for visitation.
Even in the case of business agreements ■ — and in Duryea v. Bliven (supra) the court observed that a separation agreement * ‘ is incapable of the exact performance which may be made *55 of a business one ” (122 N. Y. 571) —it does not always follow that a material breach by one party terminates all of the obligations of the other. “It is not always that a breach of contractual duty by one party to a bilateral contract discharges the duty of performance on the part of the other ” (6 Corbin on Contracts, § 1253, p. 5). In this case the plaintiff’s breach was partial rather than total and of such a nature and degree as to entitle the defendant only to such redress as is the fair equivalent of the plaintiff’s nonperformance (cf. 4 Corbin on Contracts, § 946, p. 809 et seq.).
Nor was the plaintiff’s conduct willful, like that of one who obstinately or out of pure malice, and with no reason or excuse, refuses to permit a father to see his child. Perhaps in such a case consequences more severe should result. The plaintiff did not act in bad faith, although she was mistaken about her rights and duties. She kept the defendant informed, telling him beforehand where she was about to take the child. She did what she thought would be best; also, she believed that her acceptance of employment in Oklahoma City would be helpful to the defendant in that it would reduce the weekly payments required of him from $55 to $25. It is not necessary to consider whether the complete denial of a father’s visitation rights for a sufficiently long period of time would not eventually bring to an end his contractual obligations. If he would thus terminate the contract he should perhaps be required to give reasonable notice of his election to do so unless his visitation rights be restored to him.
Finally, an analogy may be drawn between the defendant’s obligation of support under the contract of separation and a husband’s liability for alimony under a decree of separation or of divorce. If such a decree provides a right of visitation, it has been held that the husband is relieved of the duty to pay alimony only for the period in which he is denied that right but that upon its restoration to him he must again resume the payments (see Harris v. Harris, 197 App. Div. 646; Goldner v. Goldner, 284 App. Div. 961, affd. 309 N. Y. 675).
, Accordingly, the plaintiff is not entitled to recover any of the payments which became due between August 18,1952, and April 1, 1953. Although she again removed the child, this time to California, on June 19, 1955, and kept him there for 13 weeks, that period is not involved in this action as all payments which accrued within that time were made by the defendant, albeit in compliance with an order of the Domestic Relations Court.
*56 A 10-day visit by the child to the city of Washington in 1954 and an absence of two weeks from the city of New York during the Christmas vacation period in 1955 did not constitute a substantial or even technical breach by the plaintiff of her agreement (cf. Van Horn v. Van Horn, 196 App. Div. 472). Moreover, the agreement provided for the child’s temporary absence from the city “ on vacation ”.
I do not accept the defendant’s contention that there was an oral agreement for the “ averaging ” of the plaintiff’s earnings.
The plaintiff is entitled to recover for 1949, $80 (as stipulated) ; for 1950, $170 (with respect to amounts of unpaid balances plaintiff had the burden of proof); for 1951, $175 (as conceded by plaintiff); for 1952, $415 (plaintiff claims $865, but from this sum is to be deducted 18 weekly payments of $25 each, those of August 30 to December 27, when the child was in Oklahoma City); for 1953, $1,580 (plaintiff claims $2,175, but from this is to be deducted, because of the child’s' absence in Oklahoma City, four weekly payments of $25 each, from January 3 to January 24, and nine weekly payments of $55 each, from January 31 to March 28); for 1954, $660; for 1955, $480; and for 1956, $300 (through the week ending March 24). The plaintiff agrees that interest may be computed on annual balances.
Accordingly, judgment may be entered in favor of the plaintiff and against the defendant in the sum of $3,860, with interest on the yearly amounts hereinabove stated from December 31 of each of the said years respectively, except that interest upon the 1956 balance will be computed from March 24.