Richard J. Cardamone, J.
This is a motion for summary judgment brought by the plaintiff husband to compel the payment of $2,000, held in escrow by the defendant, Renzi. All of the parties, or their attorneys, were present at the oral argument of this motion and consented to the amendment of their pleadings so as to have all three parties named above joined in the action.
*161 The plaintiff hnsbancl instituted an action against the defendant attorney on the 19th of May, 1962, alleging that the plaintiff had retained the said attorney to prepare a separation agreement between the plaintiff and his then wife. The husband deposited the sum of $2,000 with the said attorney to be held in escrow and delivered to the wife, contingent upon her obtaining an Alabama divorce. He further alleged that his wife never obtained an Alabama divorce, but did obtain an annulment in the State of New York. The defendant attorney interposed an affidavit in which he claimed that summary judgment would prejudice the rights of the defendant wife, who has “ a right to a full trial on the issues in the case ”. At the same time, the defendant attorney, in his own affidavit, stated that he had no interest in the sum claimed, except to pay the person rightfully entitled thereto, that he is in doubt and that he cannot safely determine to whom the sum should be paid. He expressed willingness to pay the said sum as the court may direct, upon being discharged from liability to both of the said claimants.
Plaintiff husband and the defendant wife were married on April 4, 1959. They were separated approximately 14 months later, on June 13, 1960. The following day, June 14, 1960, they executed a separation agreement which stated that the parties “ agreed to live separate and apart during their natural lives The agreement divided their personal property. It also provided that in consideration of the husband’s paying to the wife the sum of $2,000, the wife would release the husband * ‘ from all further obligations and claims as his wife ’’, and that “it is understood and agreed that Bessie M. Taylor will journey to Alabama and will satisfy the necessary requirements there for the dissolution of the marriage and that Earl F. Taylor will consent and sign the necessary waiver and appearance for the State of Alabama ”. It was further agreed that Earl F. Taylor would leave in escrow the sum of $2,000, “ to be paid to Bessie M. Taylor upon the date that a decree of divorce is rendered in the State of Alabama ”.
Both husband and wife are now claiming the $2,000. The husband claims it on the ground that the contingency of the Alabama divorce never took place. The wife claims it on the theory that she obtained a New York State annulment.
Section 51 of the Domestic Relations Law provides that a husband and wife “cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife ’ ’. This is the settled policy of this State (La Montague v. La Montague, 239 App. Div. 352 [1st Dept., 1933], affd. 264 N. Y. 552 [1934]; De Robertis v. De Robertis, *162 261 App. Div. 476 [4th Dept., 1941]; Kyff v. Kyff, 286 N. Y. 71 [1941] ). In Matter of Rhinelander (290 N. Y. 31, 37 [1943]) the court stated: “ In pursuance of our settled policy to favor the continuance of the marriage relation, we have, however, consistently refused enforcement to a separation or support agreement .shown to be part of a scheme to obtain or facilitate a divorce, as when the husband promises to pay alimony as a reward to his wife for getting a divorce, or when the money provisions for her support are a premium or award, inducement or advantage to the wife for procuring a divorce. ’ ’
Where it is difficult to decide on a motion whether certain portions of a contract (void under Domestic Delations Law, § 51) are divisible or so integral a part of the contract as to vitiate the entire contract, then the matter is one to be decided after a trial rather than upon a motion addressed to the pleadings (Lacks v. Lacks, 12 N Y 2d 268 [Feb., 1963]).
In this ease, it is not difficult to find the entire agreement a .scheme, with a $2,000 inducement, rendering it wholly void and contrary to public policy (Domestic Delations Law, § 51). There is no divisibility, the illegality permeates the entire contract and makes it wholly unenforcible (Murthey v. Murthey, 287 N. Y. 740 [1942] ).
Insofar as performance has been had (division of the personal property from the home in Eustis, Florida) the parties will be left where they are found, but this court will prevent the arrangement from being further consummated (Schley v. Andrews, 225 N. Y. 110 [1919]).
The plaintiff has, in effect, now repudiated the agreement and seeks the return of the moneys deposited with the defendant escrow agent. In Schonceit v. Springer (103 N. Y. S. 2d 691 [1951]) the husband and wife entered into an escrow agreement under which the plaintiff delivered certain policies of insurance to an escrow agent. Under the agreement between the parties, it was provided that one of them would obtain a divorce. The plaintiff sued to obtain the delivery of his policies from the escrow agent. The wife contended that the separation agreement was illegal and against public policy and that the plaintiff who was a party to it did not come into court with clean hands. iShe argued that the policies should be turned over to her. The court held (pp. 692-693):
“ The Courts will not aid in the carrying out of an illegal contract, nor will they relieve one party as against the other. It would be a corruption of that principle if it were used to deprive one party to an illegal contract of his property and to transfer it to the other party.
*163 £ £ Where a party to an illegal contract transfers property, as the res of that contract, to an escrowee, and that escrowee, by a proceeding in the nature of interpleader, has surrendered possession to the court and has disclaimed all interest in the res, the owner of that property is not barred from recovering it. A court of equity certainly will not direct that property into the hands of the other party to the illegal contract ”. (Emphasis supplied.)
Rapp v. Cansdale (29 Misc 2d 236 [Supreme Ct., Monroe County, 1960], affd. 12 A D 2d 884 [4th Dept., 1961]) involved an application iby plaintiff husband requiring the defendant to reconvey to plaintiff an interest in real property which had been conveyed pursuant to an illegal agreement, and the court held (p. 245): ££ The agreement is contrary to the public policy of this State, in contravention of section 51 of the Domestic Relations Law, and is illegal. While ordinarily a court of equity will leave the parties to an illegal contract where it finds them, upon repudiating and disavowing the agreement plaintiff became entitled to the return of the escrowed deeds.”
Accordingly, the court finds no triable issue of fact and directs judgment in favor of the plaintiff against the defendants in the sum of $2,000, without costs or interest. Plaintiff to submit order.