Edward J. Greenfield, J.
Ordinarily, alimony is the end product of the fission of matrimony by acrimony. Eaise the stakes of the matrimonial battle to include not only money, but children, and the ensuing rancor as the estranged parents pull, tug and haul for possession of the bodies and minds of their children tends to blind all concerned to the ultimate objective, the welfare and happiness of the children.
This is such a case. A father, claiming to have been deprived of his rights of visitation with his children, when the mother remarried and took the children with her to Mexico, has retaliated by cutting off all support payments for them. The mother, who was to receive the payments under the terms of a separation agreement incorporated in the decree of divorce, has assigned her cause of action for support payments accrued and past due to plaintiff, a New York resident, who sues here to recover $3,500. The father has interposed as affirmative defenses the alleged violation of the agreement by his ex-wife, the invalidity of the assignment and a setoff for the sums necessarily expended by him in exercising his visitation rights.
At the trial before me, the following facts were elicited: Plaintiff’s assignor and defendant were married in 1946 in Mexico City, where the wife’s father resided. They had two boys, the elder now 14, the younger, 8 years old. On April 16, 1959, the parents entered into a separation agreement pur *494 suant to which defendant agreed to make support payments of $600 per month, allocated at $350 for the wife until she remarried and $125 for each child until he reached the age of 21.
The agreement provided that the wife was to have the custody of the two boys, and the husband was to have unlimited visitation rights. The agreement further provided that without consent, the children could not be removed from the State of New York except for a limited stay in Mexico not exceeding three months in the event of the death of the wife’s father.
Two years later, on April 21, 1961, the separation agreement was modified by mutual consent, among other things to provide: “ In the event the wife re-marrics, the children may be taken out of the State with the mother to her place of abode.”
The agreement was to be incorporated in any judgment of separation or divorce, and it was to survive the decree. The wife obtained a decree of divorce from the defendant in Mexico on June 6, 1961 and the agreement was included therein.
In 1963 the wife was remarried in Mexico, and in April of that year took the children to live with her and her new husband in Mexico City. They were put in schools there, and thereafter, defendant was able to see the boys only for a two-week period at Christmas time, when he came down to Mexico and took them to Acapulco. A trip by them to join their father in New York had been scheduled for September.
Since the removal of the children to Mexico, defendant has refused to make any further support payments for them, and in fact claims the right to set off some $2,500 he is alleged to have spent in air fares and hotel expenses on his visit to Mexico.
At the very threshold, defendant challenges the right of the plaintiff, as an assignee, to sue, asserting that the right to receive support payments for the children may not legally be assigned. While he cites no cases directly in support of that proposition, he argues that the legal obligation of a father to support his children is nondelegable, and that while the wife may be required to account for moneys paid to her for the children’s support, an assignee who might divert all or part of such sums could not be held to account. Further, he argues, the children are third-party beneficiaries, and their rights could not be assigned.
The answer to this simply is that what is being assigned is not the children’s right to receive support, but the wife’s contractual right to receive specified monthly payments. While the children are entitled to support from the father irrespective of contract, in the ordinary case, they have no standing to *495 enforce the contract in their own right, nor do they have direct independent property rights therein. (Ben Ami v. Ben Ami, 9 A D 2d 646 [First Dept., 1959]; Yates v. Yates, 183 Misc. 934.)
Under the agreement, the payments are made expressly payable to the wife, and the cause of action to enforce payment vests only in her. (Kendall v. Kendall, 200 App. Div. 702, 705; Magrill v. Magrill, 16 Misc 2d 896.) Unlike actions to enforce alimony payable pursuant to judicial decree where remedies are afforded exclusively to the wife and may not be assigned, her right to enforce a contract, like other choses in action, is freely assignable. (Matter of Thrall, 12 App. Div. 235, affd. 153 N. Y. 644; Spence v. Woods, 134 App. Div. 182; Phinney v. Andrus, 108 Misc. 717.) The contention that she cannot assign her contractual right to the support payments so that another may bring suit for her is thus found to be without merit.
Threshold considerations having been disposed of, the remaining question to be resolved here is whether the father’s obligation to make payments for the children’s support is conditioned upon his continuing to have unrestricted visitation rights. In the absence of any express governing provisions in the agreement, a willful deprivation of the rights of visitation may vitiate the father’s obligation to make further payments pursuant to the contract. (See Duryea v. Bliven, 122 N. Y. 567; Richards v. Richards, 5 Misc 2d 46 and cases cited therein.) However, where there is bona fide reason for removal of a child, and not an intentional deprivation of visitation rights as a matter of spite, such a removal consistent with the child’s welfare is deemed permissible, and will not constitute a justification for withholding support payments. (Meiners v. Chinigo, 283 App. Div. 1096, app. dsmd. 308 N. Y. 811; Almandares v. Almandares, 186 Misc. 667.)
In this case, the parties had evidently contemplated the possibility of the children being removed from New York, and the agreement was not silent on that score. The original agreement provided: “7. The husband agrees that during the Summer of 1959, should the wife desire to go to Mexico to visit her father, she may take the younger son Robert with her for such visit for approximately one month solely at her own cost and expense. In the event of the death of the wife’s father in Mexico City, the husband agrees that the wife for the purpose of winding up the estate and business affairs of her father, take the children with her to Mexico for a period of three months. Should the wife stay beyond the three month period, payments to her for her support shall cease until she *496 returns. This shall not apply, however, to support of the children. With the above exception, neither party may remove the children from the State of New York without the consent of the other party.”
Here was a clear limitation on removal of the children from New York, yet even in that original agreement, which specified the conditions under which payments for the wife should cease, the independence of the covenant for support payments for the children was spelled out, so that the father’s obligations were not reciprocal with accessibility of the children.
When the agreement was modified by mutual consent two years later, the wife was given greater freedom of movement. The requirement that the children be kept in New York was superseded by the provision that if she remarried, the children could be ‘1 taken out of the State with the mother to her place of abode ”. Except as amended, all other provisions, including presumably the father’s continuing obligation to make support payments were to remain in full force and effect.
Clearly, under the amended agreement, the wife could have removed the children from New York, when she remarried and have taken them 3,000 miles away to California. But, says the husband, it was never contemplated that she could take them out of the country. If, as he testified, this was his intention, it could have been expressed very clearly and simply in the agreement. There is no hidden or implicit restriction in the term “out of the State”. It means anywhere other than New York, and not, as defendant would have it, “ out of the State but not out of the country ’ ’, or ‘ ‘ out of the State but not more than 200 miles from New York City”. There is nothing in the agreement which would preclude the wife from taking the children to the ends of the earth if that is where she were to take up her abode. Even if there were, payments for support of the children were not made dependent upon their physical location or accessibility to visitation by the husband. (Sterns v. Stevans, 11 A D 2d 726, app. dsmd. 9 N Y 2d 716; Rubino v. Bondi, 36 Misc 2d 973.)
The husband was not in fact deprived of his visitation rights — their exercise was merely made more difficult by the interposition of distance. The wife has put no barriers in the way of the exercise of his rights, provided there was no interruption of the children’s schooling. The parties from the outset had recognized that the husband’s right of visitation could not be absolute, but was subject to the paramount interests of “ the health and welfare of the children ”. Their welfare now calls for them to be with their mother, at her new marital *497 abode, but it is certainly not in their welfare to have support payments from their father cease entirely as a result.
In an age of shrinking distances, dispersal of a family no longer need spell an end to all further contact. In the past, defendant had taken his children with him to Puerto Rico — now he is required to go further afield. He must pay his own way, however, and no justification can be found for attempting to deduct the expenses of a lavish stay with the boys ($2,500 in two weeks) from the sums their mother should otherwise receive for their support.
Expenses incurred in exercising rights of visitation are not a proper deduction from support payments.
Accordingly, the affirmative defenses and setoff of the defendant are dismissed, and judgment aAvarded plaintiff for accrued payments under the agreement up to May, 1964, in the sum of $3,500 Avith appropriate interest.