Patrick J. Picariello, J.
Action instituted by plaintiff to recover arrears in maintenance and support provided in a separation agreement bearing date October 17, 1963.
*400 The agreement provides for the payment of the sum of $25 weekly to plaintiff for her support and maintenance. It was conceded at trial that such payments were made by defendant until and including the week ending October 9, 1964, after which payments ceased. The agreement further provides for payment of the sum of $15 weekly to plaintiff for the support and maintenance of the infant issue of the marriage. In addition thereto, the agreement reflects defendant’s obligation to purchase all necessary clothing and furnishings for said infant, provides for all doctors’ bills and hospital expenses that may be incurred on behalf of said infant for which defendant did agree to maintain and pay premiums on insurance, provides for the infant’s education and finally provides that defendant give directly to the infant the sum of $10 weekly for personal expenditures. It was also conceded at the trial that both the $15 and $10 weekly payments for the infant’s maintenance and support were paid to the plaintiff to the date of trial and, further, that defendant had paid for the infant’s clothing and other miscellaneous items up to the month of May, 1964, when such payments ceased.
The complaint comprises three causes of action. The first cause is predicated upon defendant’s failure and refusal to provide for both plaintiff and the infant pursuant to said agreement; the second cause seeks a recovery of various sums of money allegedly expended by plaintiff after May, 1964 for the infant other than the $25 weekly received by her on account of said infant’s maintenance as provided for in the agreement; the third cause was withdrawn during the trial.
Defendant’s answer includes three separate defenses, viz.: (1) that the subject agreement is void since it violates former section 51 of the Domestic Relations Law; (2) that plaintiff violated the terms of said agreement by interfering with defendant’s visitation rights; and (3) that the court lacks jurisdiction. Also included in the answer is defendant’s counterclaim to recover the sum of approximately $5,000 paid to the plaintiff under the agreement.
In view of the concessions made during the course of the trial, the only issues to be resolved herein are those raised by the separate defenses.
With reference to the first defense: the first consideration concerns itself with the factual finding. Defendant testified that this was the parties’ second separation; that this agreement was entered into to enable the plaintiff to obtain a divorce; and that simultaneously with the execution of the separation agreement he executed a power of attorney authorizing his appearance in a Mexican court in such divorce proceeding. Although this was *401 denied by plaintiff, defendant’s testimony is conclusively documented by a portion of the preamble contained in the Mexican divorce decree. On December 31, 1963 a decree of divorce was granted by the Civil Court, Bravos District, City of Juarez, Chihuahua, Mexico, in favor of the wife and against the husband in which action the latter appeared by attorney. The decree further reflects that the husband’s attorney appeared in said proceeding by virtue of a power of attorney gramded on October 17,1963 by the husband in the County and State of New York, and, 1 ‘ in accordance with the authority granted in such mandate ” the husband’s attorney “confessed the (wife’s) complaint in all its parts, ratified the (separation) agreement entered into by the parties, submitted his constituent (husband) to the jurisdiction of this Court and prayed.”
It is significant to note that the separation agreement is dated October 17, 1963 and the divorce decree is dated just about 10 weeks later, viz., December 31, 1963. Under all the circumstances the court finds that the separation agreement was predicated upon the collateral oral understanding that plaintiff was to proceed to Mexico to obtain a divorce. This collateral oral understanding tended to alter or dissolve the marriage status between the parties and thus invalidated the written separation agreement and constituted a violation of former section 51 of the Domestic Relations Law.
The more momentous consideration to be given to this defense is whether the same is available to the defendant under all the circumstances of this case.
Notwithstanding defendant’s opportunity to put in issue the validity of this agreement in the Mexican forum, he permitted the same to be approved and incorporated in the divorce decree obtained by the plaintiff. Paragraph Third of said decree reads as follows: ‘ ‘ The separation agreement entered into between the spouses on October 17, 1963 * * * is hereby approved in all its parts, the same being incorporated by reference into this decree as if fully set forth herein, but said agreement is not merged herein but shall survive the decree and shall continue to have full legal force and effect.” (See Fink v. Goldblatt, 18 A D 2d 629, affd. without opn. 13 N Y 2d 957; McLinden v. McLinden, 286 App. Div. 1033; Baylek v. Baylek, 25 Misc 2d 391.)
The case of Viles v. Viles (14 N Y 2d 365), cited by defendant in support of his defense, does not apply. It is easily distinguishable from the case at bar since the separation agreement was not incorporated in or made a part of the divorce decree in that case.
*402 Moreover, defendant accepted the sum of $15,000 paid by the plaintiff pursuant to the provisions of the separation agreement and which represented his undivided one-half interest in the domicile premises owned by the parties as tenants by the entirety. Most significant of all, defendant remarried in September of 1964.
Defendant now seeks to relieve himself of his obligations under the agreement after he has partaken of the benefits of the decree of divorce which followed the making of and incorporated the agreement.
The court concludes that defendant’s own previous actions by which the contrary had been admitted, implied or by him determined bar him from availing himself of the defense of illegality. He is therefore estopped and the defense is hereby dismissed. (See Donner v. Donner, N. Y. L. J., Jan. 25, 1965, p. 16, col. 1, and cases therein cited; also Novick v. Novick, N. Y. L. J., Oct. 15, 1964, p. 16, col. 2, affd. N. Y. L. J., March 19, 1965 [App. Term, 1st Dept.], p. 15, col. 7.)
With reference to the second defense, the court finds as follows:
Defendant testified that the infant daughter had visited him at his place of business once or twice a week until May of 1964, when plaintiff and the infant visited Israel for a period of approximately 10 weeks. After their return such visitations ceased.
It is fundamental that the husband’s visitation rights constituted a material portion of the separation agreement and that if the wife substantially violated said provision she could not successfully invoke other covenants in said agreement which provide for support and maintenance (see Duryea v. Bliven, 122 N. Y. 567; Richards v. Richards, 5 Misc 2d 46; also Matter of Noel, 173 Misc. 844; Blumberg v. Blumberg, 117 N. Y. S. 2d 906, affd. 280 App. Div. 986; Magrill v. Magrill, 16 Misc 2d 896; Garbarino v. Keller, 20 Misc 2d 303; Morgan v. Morgan, 201 F. 2d 868; Borax v. Borax, 4 N Y 2d 113). And it is also elementary that a deprivation of the rights of visitation ordinarily may vitiate the father’s obligation to make further payments pursuant to the separation agreement (see Duryea v. Bliven, supra; Richards v. Richards, supra, and cases cited therein; also Elkin v. Ehrens, 43 Misc 2d 493). However, the husband, though alleging denial and interference by the wife with his visitation rights, does not specify any dates of such denial or interference, and his proof lacks any showing of affirmative or willful action by the wife resulting in such denial and interference with his visitation rights. The fact is that *403 the infant daughter, who is 17 years of age, upon examination by the court without her parents’ presence, testified that her mother did not forbid or prohibit her from continuing her visits after returning from Israel. It may very well be that her father’s remarriage in September of 1964 had something to do with the discontinuance of such visitations.
The court, on the evidence in this case, finds as a fact that there was no willful and unreasonable deprivation of the defendant’s visitation rights (Magrill v. Magrill, supra; Borax v. Borax, supra) and accordingly dismisses defendant’s second defense relative thereto.
The court dismisses defendant’s third defense on the law.
Under the circumstances and after trial the court finds judgment for the plaintiff on her cause to recover arrears for her support and maintenance from the week commencing Saturday, October 10, 1964 through the week commencing Saturday, June 12, 1965 (36 weeks at $25 per week).
After considering plaintiff’s cause to recover for expenditures made by her on behalf of the infant issue of the marriage, the court makes the following findings: (1) the claim for medical expenses is disallowed since plaintiff failed to notify defendant of the infant’s illness and thereby breached the provisions of the agreement with respect thereto and this claim is therefore dismissed; (2) the claim to recover expenditures made by her on behalf of the infant issue of the marriage is dismissed without prejudice for failure of proof. Plaintiff offered in evidence approximately 133 receipts for merchandise allegedly purchased and paid for by her for the infant. These receipts vary in sum from 26(/; to $263.30, are of all sizes, shapes and colors, are to a great extent so illegible and mutilated that the court cannot determine what articles were allegedly purchased, and many are dated before May, 1964 and others are dated after the commencement of this action. It should be noted also that the receipt for $263.30 representing clothing allegedly purchased for the infant is dated February 8, 1964. It was conceded by the parties, and the infant so testified, that defendant had paid for all her clothing prior to May of 1964.
Defendant’s counterclaim is dismissed on the merits.
After trial, judgment for plaintiff against defendant for the sum of $900, with appropriate interest and costs. Defendant’s counterclaim dismissed, with costs.
The foregoing is intended as the decision of the court.