Richard W. Wallach, J.
We learned from the United States Supreme Court (Estin v. Estin, 334 U. S. 541, and Vanderbilt v. Vanderbilt, 354 U. S. 416) that economically speaking and from the support point of view a husband can have two wives at a time. This case demonstrates that economically speaking a wife can have two husbands at a time, even where, as here, an inducement to the creation of husband No. l’s support obligation included an interspousal bargain for an immediate divorce.
Twenty-three years to the day after their marriage in 1944 and on June 9, 1967, plaintiff and her former husband entered into a separation agreement providing for her support at the rate of $1,000 per month for life or until she remarried. Shortly thereafter and on August 29,1967, the then still married parties executed an amendment to that agreement reaffirming that pro *1035 vision for support, and further providing that if plaintiff wife would at any time remarry, defendant husband would continue support payments during the lifetime of the wife but at a reduced rate of $500 per month. Two days later and on August 31, 1967, based upon the personal appearance of defendant husband and the appearance by counsel of plaintiff, the First Civil Court for the Bravos District, Chihuahua, Mexico, issued its decree of divorce explicitly incorporating by reference the agreement and its August amendment without merger. Defendant contends that considerable pressure attended the execution of the amendment, since he was under the impression that the Mexican State of Chihuahua was going out of the divorce business one day later on September 1,1967. (It did, but some three years later, in November, 1970.) That some additional pressure existed is evidenced from defendant’s almost immediate remarriage after the Mexican divorce decree issued.
In July, 1970 plaintiff remarried, and defendant made the $500 monthly payments through April, 1972, but refused to continue thereafter. This lawsuit to enforce the payments followed, and both sides move for summary judgment, the husband counterclaiming to recover the allegedly illegal payments already made.
Section 5-311 of the General Obligations Law, as amended effective April 27, 1966, provides that any agreement between husband and wife shall not be considered a “ contract to alter or dissolve the marriage [and therefore illegal] unless it contains an express provision requiring the dissolution of the marriage or provides for the procurement of grounds for divorce.” This statutory amendment was directed at dismantling the ticking bombshell of Viles v. Viles (14 N Y 2d 365) and its progeny (Fisher v. Fisher, 43 Misc 2d 905; Taylor v. Rensi, 41 Misc 2d 160). These decisions had cast uncertainty upon the legality (by reason of possible collusion) of any separation agreement closely followed by the dissolution of the marriage. Although defendant urges that Viles (supra) still has sufficient vitality left to interdict this particular post marriage support provision extracted on the eve of a Mexican divorce, the court must disagree. Absent an express recital of consideration to procure a divorce within the four corners of the agreement or its amendment, the inquiry of the court must end (Rosen v. Goldberg, 23 N Y 2d 791; Gunter v. Gunter, 20 N Y 2d 883).
The now defunct Viles doctrine to one side, defendant argues in the alternative that there is something morally repugnant in permitting a woman to enjoy support payments from one man, *1036 while living with another. If the question were an open one in this age of feminine liberation there might be some force in the contention. Unfortunately for defendant the argument is foreclosed. Where an agreement does not expressly provide that support payments shall terminate upon remarriage of the wife it has been held that the obligation survives (Gush v. Gush, 14 Misc 2d 146, affd. 9 A D 2d 815; Graham v. Hunter, 266 App. Div. 576; Wersinger v. Cook, 187 Misc. 1059; Rosenbloom v. Rudd, 31 N. Y. S. 2d 821). Absent an express provision, adultery has been held insufficient at common law to impair the support obligation of a settlement, agreement (Fearon v. Earl of Aylesford, 14 Q. B. D. 792; Galusha v. Galusha, 116 N. Y. 635; Davis v. Davis, 8 A D 2d 566; Murray v. Hassman, 26 A D 2d 647). In this context there would seem to be no reason to place a state of wedlock on a lower plane than notorious meretricious conduct (see Rosenberg v. Rosenberg, 46 Misc 2d 693).
It is unnecessary here to consider whether monetary exploitation by a wife of her husband’s midnight fervor for fresh matrimonial venture can qualify as duress -sufficient to nullify what, in the cold light of day, appears as an oppressive bargain. Because defendant procured the Mexican decree which incorporated the agreement -and its amendment by reference, he is estopped from raising this issue of duress (and perhaps even the question of illegality) (Fink v. Goldblatt, 18 A D 2d 629, affd. 13 N Y 2d 957; Fitzgerald v. Morgenstern, 48 Misc 2d 575; Werber v. Werber, 47 Misc 2d 399).
Plaintiff’s application to amend her complaint so as to include nine unpaid installments from May, 1972 through January of 1973 is granted, and plaintiff may enter judgment against defendant in the sum of $4,500, together with the sum of $750, counsel fees, which the court is empowered in its discretion to award in suits of this kind (Domestic Relations Law, § 238; Fabrikant v. Fabrikant, 19 N Y 2d 154). Defendant’s counterclaim is dismissed as a matter of law.