McCue *v.* McCue.

4-8015                                    197 S. W. 2d 938

Opinion delivered December 2, 1946.

*Fred A. Isgrig* and *John S. Gatewood,* for appellant.

*Taylor Roberts,* for appellee.

GRIFFIN SMITH, Chief Justice.   Appellee, a dentist, sued for divorce, alleging indignities of an intolerable

nature. His wife cross-complained with the averment that the Doctor's fractious attitude had become publicly insulting to such an extent that the mutual relationship of husband and wife had ended. The abstract does not show that the cross-defendant denied these charges. On the contrary, there is a ready inference that Dr. McCue welcomed the opportunity to make his wife a burden-bearer in matters of testimony and the production of witnesses. Within three weeks McCue married a widow who had a young daughter. Appellant (the former Mrs. McCue) testified in the proceeding from which this appeal comes that her understanding of arrangements pertaining to the divorce decree was that Dr. McCue sought matrimonial emancipation because he wanted to marry the widow.

Whatever the prevailing motives may have been, appellant—who is referred to as having assisted her husband in his profession for more than fifteen years—seemingly came to the conclusion that her interests would be best served by cross-complaining and permitting the Doctor to prevail in fact if not of record.

The decree was rendered on Mrs. McCue's testimony and, presumptively, on the testimony of a witness she called. An expression in the decree is: ". . . it appearing to the Court by agreement upon the part of the plaintiff and the defendant that a property settlement has been made, . . . it is ordered that $25 per week be made to Lida B. McCue as permanent alimony . . . This decree is based upon property settlement and is a consent decree."

Other items as to which there was adjudication included $350 to be paid by Dr. McCue in February for use of the former wife in moving "her" furniture and household goods from Arkansas to Texas. In a subsequent provision it was decreed that all household furniture and furnishings "now in possession of the defendant" should go to the cross-complainant "as her personal property." She was also awarded "the 1942 Nash Tudor sedan."

In June, 1946, Dr. McCue petitioned for modification of the decree, alleging that because of "a lack of business" he had been forced to abandon his profession in Little Rock, and had moved to Green Forest; [a city or town of 750 in Carroll County, Ark.] that he is a stranger there and will not be able to earn compensation in excess of necessary living expenses for a long period of time. It was further alleged that the petitioner "had information to the effect" that the former Mrs. McCue, then 54 years of age, ". . . is, or at least will in the near future, be employed in a remunerative position, [and that] she is able to work. His prayer was that provision in the decree of 1944 for alimony ". . . be cancelled, set aside, and held for naught."

The Chancellor thought otherwise and only partially modified. McCue was relieved entirely during June and July, 1946. The direction was that, beginning August 1, $25 should be paid "every two weeks until further orders."

Two questions are presented. (a) Did the Court have jurisdiction to modify the decree; (b) if there were power to relieve, was it appropriately exercised?

Dr. McCue testified he had adopted his second wife's daughter, a child thirteen years of age in 1946. He bought a piano for her use at a cost of about $800, and had paid $1,475 for an automobile. Appellee is 49 years of age, and with the exception of a slight leg impairment, is in good health "and happy." His present wife is 44.

Appellee purchased a home in Little Rock in October, 1944, with arrangements for deferred payments. The present Mrs. McCue used $1,227 of her personal funds in buying the property. It cost $4,500 and was sold for $8,250. Dr. McCue insisted that improvements he made, when added to the original consideration, represented an investment of $6,100. When the home was sold, $3,100 was given the second wife.

Gross income in 1944 was $13,000, in 1945, $11,252. Appellant's counsel argue that according to Dr. McCue's

testimony, his net income for 1945 was $6,668.25, while appellee contends other deductions to which he was entitled, and concerning which he testified, reduced the net to $4,627.32.

During the first five months of 1946, appellee's professional receipts were: January, $672; February, $1,088; March, $1,017; April, $810, and May, $672—a total of $4,259, or an average of $851.80 per month; whereas the 1944 average was, roughly, $1,083, a decrease of $231 per month from the highest income year mentioned.

Dr. McCue, after moving to Green Forest, purchased a six-room residence thirty years old, and says he agreed to pay $9,000 for it, $1,500 being the required "down" payment, with $1,500 to follow, the balance in monthly installments. Appellant (Lida B. McCue) has no income and has lived with a nephew and his wife. The relative has not finished school.

It was recognized in *Shirey* v. *Hill*, 81 Ark. 137, 98 S. W. 731, that a husband's contract for separate maintenance of his wife is binding. Mr. Justice Wood, in disposing of the argument that Lawrence Chancery Court was without jurisdiction, cited *Wood* v. *Wood*, 54 Ark. 172, 15 S. W. 459, and § 2675 of Kirby's Digest, now § 4380 of Pope's Digest. The statute provides that an action for alimony or divorce shall be by equitable proceedings. Effect of the decisions is that enforcement of a contract for alimony is an action *for* alimony, as distinguished from an action on debt, although the debt, as such, is recognized as subsisting by reason of agreement between the parties.

A leading case dealing with alimony contracts is *Pryor* v. *Pryor*, 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep. 102. A part applicable to the case at bar expressed by Mr. Justice McCulloch, later Chief Justice, is this: Where husband and wife, in contemplation of immediate divorce, enter into a contract whereby the husband agrees to pay certain sums of money at stated times, and such parties voluntarily cause this contract to be made a part of the decree for divorce, the decree cannot subsequently

be modified in so far as it is based on the contract, for any substantial change would be a modification of the contract itself.

At page 309 of the Arkansas Reports, where the Pryor case appears, it is said: "The agreement was, in effect, contemporaneous with the decree granting the divorce."

*Pryor v. Pryor* was distinguished in *McConnell v. McConnell*, 98 Ark. 193, 136 S. W. 931, 33 L. R. A., N. S., 1074. Mrs. McConnell failed to establish grounds for divorce and her complaint was dismissed. On appeal we affirmed. The chancellor also set aside a separation agreement, effect of which was to relieve the husband of payments he had promised. In affirming, the following holding in *Bowers v. Hutchinson,* 67 Ark. 15, 53 S. W. 399, was quoted with approval: "In this country the courts, as a general rule, have enforced covenants and promises in deeds of separation relating to the maintenance of the wife and property, provided they are based upon a sufficient consideration, are fair and equal, are reasonable in their terms, and are not the result of fraud or coercion, and the separation has actually taken place when the agreement is entered into, or immediately follows." The McConnell opinion then says: "At the time of their separation when the agreement under consideration was made, plaintiff was in great distress and far away from any one whom she could look to for advice, and it seems that she trusted entirely to her husband's sense of fairness in the matter."

It is worthy of note that Mr. Justice HART, who wrote the McConnell opinion, spoke for the Court in *Erwin v. Erwin,* 179 Ark. 192, 14 S. W. 2d 1100. The Erwin case was decided in 1929, when the opinion writer was Chief Justice. The holding in *Pryor v. Pryor* is upheld, but explained in its relation to *Erwin v. Erwin.*

This brings us to a consideration of *Holmes v. Holmes,* 186 Ark. 251, 53 S. W. 2d 226. The first headnote treats the opinion as having held that ". . . . a decree fixing alimony in accordance with an agreement

of the parties may subsequently be modified by the Court to meet changed conditions." After stating that the appellant relied upon *Pryor* v. *Pryor,* the Holmes case quotes that portion where it is said, "The Court is not, in the first instance, bound by the agreement of the parties concerning the amount of alimony to be allowed to the wife; . . . and, *a fortiori,* the agreement cannot, in the face of the statute, hinder the Court in altering its own decree of allowance. The decree is not entirely dependent upon the agreement, and therefore the power to subsequently alter cannot be controlled by it."

Although the Holmes transaction and the case at bar are strikingly similar, the essential holding in *Holmes* v. *Holmes* is that the decree recitals were not intended as a finding by the Court that the plaintiff and defendant had by a joint undertaking having contractual force substituted their own arrangements for the Court's authority. Wording of the decree was: ". . . the parties hereto have agreed upon a settlement of the property rights; [therefore] it is ordered that the defendant pay to the plaintiff by way of alimony the sum of $150 at this time and $150 on the first day of each and every month hereafter."

There is this expression in the opinion: "It will be seen . . . that the agreement of the parties was 'merely one as to the amount the Court by its decree should fix as alimony,' and was not intended as an independent agreement for the payment of alimony."

It might be argued with a full measure of sincerity and earnestness that there was an independent agreement in the Holmes case, but that point has already been decided. The question is, Does the Holmes holding supersede *Pryor* v. *Pryor* and other decisions where it is said that an independent contract incorporated in a decree is not subject to subsequent modification by the Court?

Judicial hairsplitting is not a pleasant pursuit, nor is it conducive to confidence in lawyer or Court. The appeal with which we are dealing might very well be

disposed of by saying that a preponderance of the evidence does not show that appellee was unable to pay. But this would not harmonize the seeming conflicts to which reference has been made.

Dr. McCue testified his attorney told him he could agree to the obligation, have it incorporated in the decree, then later procure modification. But there is no suggestion that his idea was brought to Mrs. McCue's attention. On the contrary, her testimony is that the settlement was a covenant openly arrived at because it was the course thought best.

Certainly the Court is not bound by an agreement disputing husband and wife may enter into, in order to terminate a controversy; and this is true even in the absence of fraud or coercion. Where, however, as here, the wife is told that in substitution of her marital rights she will permanently be paid $25 per week, some rational meaning must be given the decree recital that "Said payments of $25 per week to be made by the plaintiff as permanent alimony for the defendant. This decree is based upon property settlement and is a consent decree."

To what could "consent" refer except that McCue and his wife had agreed upon what the husband would pay, how it should be paid, and over what period of time? The two could not have the divorce granted in consequence of mutuality, because of statutory inhibition and public policy.

We think the decree reflects this situation: The Chancellor required the minimum proof necessary under divorce laws, and in granting the decree exercised appropriate discretion. But in dealing with property rights it appears that the parties themselves, and their attorneys, reached an understanding. The Court had nothing to do with the method by which that result was arrived at. The suggested provisions could have been rejected; but that was not the Court's purpose or policy nor was it the desire of Dr. McCue. If he and his wife were satisfied, evidence affecting ability to pay was unnecessary; and their agreement became a part of the decree. As to that

phase of the litigation the Court relied upon representations. To say that the commitment on Dr. McCue's part to pay permanent alimony of $25 per week was not his contract, but was due to the Court's exercise of judicial discretion, would be to warp words and conduct to suit an undisclosed plan—the plan of a husband who told his attorney to proceed with the hearing, procure immediate results, but to stand by for a relief call when the occasion seemed inviting.

That part of the decree modifying the former allowance is reversed, with directions that all delinquent payments be made. Appellant's attorney is allowed a fee of $100, to be paid within thirty days.