Doris CARDEN *v.* Andrew J. McDONALD, As Bishop
of the Roman Catholic Diocese of Little Rock

CA 99-629                                      12 S.W.3d 643

Court of Appeals f Arkansas
Division II
Opinion delivered March 8, 2000

*Howard C. Yates*, for appellant.

*Williams & Anderson LLP*, by: *David F. Menz* and *Stephen B. Niswanger*, for appellee.

SAM BIRD, Judge. This case involves a boundary-line dispute in Perry County. The Roman Catholic Diocese of Little Rock, represented by Bishop Andrew J. McDonald, filed a petition against appellant Doris Carden and two other defendants to quiet title to certain land owned by the Diocese in Perry County. The other two defendants defaulted and are not involved in this appeal. This appeal involves a question about the enforceability of a settlement agreement entered into between the parties and dictated into the record. The chancellor decided that the agreement was enforceable, and we affirm.

On December 16, 1998, a hearing was held on Bishop McDonald's motion for summary judgment. An agreement was reached between the parties, and it was read into the record at the hearing. Soon thereafter, Ms. Carden changed her mind about the settlement, discharged her attorney, and employed a new one. Carden's original attorney notified the court and the Bishop's attorney that Ms. Carden had "withdrawn her consent to the agreement." Carden's new attorney entered an appearance and protested entry of a judgment based on the settlement agreement. Nevertheless, on January 11, 1999, the chancellor entered a judgment that contained the terms of the agreement that had been read into the record on December 16.

On January 14, 1999, Ms. Carden filed a motion to set aside the judgment and for a new trial. A hearing was held on the motion on February 8, 1999, and on February 16, 1999, the chancellor entered an order denying the motion. Ms. Carden now appeals the denial of her motion for new trial, arguing that the chancellor erred in entering the decree on January 11, 1999, and further erred in denying her motion for new trial.

At the December 16, 1998, hearing there was evidence that in 1967 the Diocese and the adjacent property owners, including Ms. Carden's predecessors in title, her grandparents, the Malones, entered an agreement that the fences that existed at that time between their properties were for convenience and were not the actual boundary lines. Quitclaim deeds were exchanged that established the property lines as the surveyed boundary lines. Ms. Carden agreed that the fences had not been moved since that time, but she claimed adverse possession to the fences or, in the alternative, boundaries along the fences by acquiescence.

At the hearing on December 16, 1998, no testimony was taken. The record consists of a colloquy between the chancellor, the attorney for the Diocese, and Ms. Carden's attorney. It is unclear exactly what Ms. Carden was seeking, but her attorney kept repeating that "they," meaning the Church, had "jerked culverts" out of an area, and that "they" were trying to block Ms. Carden's access to the county road, which Bishop McDonald denied. A recess was taken. When the parties returned to court, the following exchange took place:

> MR. NISWANGER [*Bishop McDonald's attorney*]: Your Honor, the plaintiff and separate defendant Doris Carden have reached an agreement with respect to this dispute and I'd like to read it into the record, and ask Mr. Allison [*Ms. Carden's attorney*] if I miss something to chime in.
>
> The parties have agreed to recognize the survey boundary lines as the actual boundary lines of the property. The plaintiff will give an easement to Ms. Carden to use the gravel drive, and she's agreed that she will permit the church to use that easement during church when people park out there and other special events, such as weddings, whenever parking is required. The church will continue to allow Ms. Carden to have an access easement in front of her property, excuse me, in front of the house. And, further down, on her southern boundary she's got another access that she created recently that we will continue to allow her to use for access to the gravel county road.
>
> Ms. Carden has agreed to be responsible for moving the old, wire fence on the southern boundary of the property up to the survey boundary line. The church has agreed to be responsible for replacing the stakes that mark the survey boundary line. The church will pay to move the fence along the northern boundary line of Doris Carden's property to the survey boundary line.
>
> THE COURT: Anything to add, Mr. Allison?
>
> MR. ALLISON: Your Honor, the only—the fence on the west side, Ms. Carden, if she wants it moved, will move that herself, would be the only other —
>
> MR. NISWANGER: Yes.
>
> MR. ALLISON: And I believe that's everything.
>
> THE COURT: Is that your agreement, Ms. Carden?

Ms. CARDEN: Yes.

THE COURT: Okay. And you've obviously bound the church.

MR. NISWANGER: I'm sorry?

THE COURT: You've obviously bound the church.

MR. NISWANGER: Yes, Your Honor.

THE COURT: Okay. Thank you-all.

Ms. Carden's attorney admitted at the new-trial hearing that the judgment that was entered on January 11, accurately reflected the agreement that was read into the record on December 16, 1998. However, his argument is that Ms. Carden later thought better of her assent to the agreement and withdrew her consent. He contends that until the order had been actually written, signed by the chancellor, and filed of record, either party could withdraw his or her consent to the settlement agreement.

At the new-trial hearing, Ms. Carden testified that Mr. Allison had led her to believe they were going into court that day only to "get a trial date set." She claimed she did not know there was a motion for summary judgment pending or that the merits of the case might be discussed or even decided on that date. She said that when the recess was taken, she and Mr. Allison conferred, and,

> He told me that I had to go out and agree to it, that we had to come to some agreement and I had to say I agreed to it when we went back out into the courtroom, even though he was well aware I did not agree to any of it.

Ms. Carden admitted that she had told the chancellor that she agreed to the settlement, but that she was "just shocked," "floored by it," "I wasn't expecting anything like that."

On cross-examination, Ms. Carden insisted that she had not agreed to the stipulation, even though she had said she did. "I agreed as he told me to do. He told me I had to agree." She added, "I was furious with the decision. I was floored by the whole thing. I said yes because I was instructed to say yes." She also admitted, however, that she was involved in negotiating some of the details of the agreement, including that she be granted three easements.

On February 16, an order was filed, holding that the agreement read into the record had the full force and effect of a valid and binding agreement. On appeal, appellant argues that she could withdraw her consent to the agreement any time before it was signed by the chancellor and filed of record. She asserts, "The consent of all parties must exist at the very moment the court enters judgment of record. It is not sufficient that their consent may at one time have been given."

■ We review chancery cases de novo on appeal and the chancellor's findings of fact will not be reversed unless they are clearly erroneous (clearly against the preponderance of the evidence), giving due regard to the chancellor's superior opportunity to assess the credibility of the witnesses. Ark. R. Civ. P. 52(a); *Kunz v. Jarnigan*, 25 Ark. App. 221, 756 S.W.2d 913 (1988).

Appellant bases her position that her agreement could be revoked solely upon the case of *McIlroy Bank & Trust v. Acro Corp.*, 30 Ark. App. 189, 785 S.W.2d 47 (1990). In *McIlroy Bank*, the bank and Ralston Purina, an intervenor, sued Acro in a foreclosure action. Eventually, Acro's attorney and the other parties' attorneys appeared and announced to the court that the case had been settled. The parties agreed that the court would enter a consent judgment in favor of McIlroy Bank against Acro for $541,772.24, that the settlement would have no effect on a related lawsuit pending in another county, and that Ralston Purina would be awarded a reasonable attorney's fee. The attorney for the bank was asked to prepare the decree. When the proposed order was submitted to him for approval, Acro's counsel refused to sign it because it awarded an attorney's fee of more than $54,000, and because he did not like the language reserving the rights of the parties in the other lawsuit. Acro's counsel then prepared his own decree, in which the attorney's fee was only $1,000, and which also substantially altered the retained rights for the other lawsuit. Both decrees were presented to the judge, who signed the one presented by Acro's attorney, even though none of the other attorneys had approved it. McIlroy Bank appealed, and this court held that "it was error to sign the consent decree under these circumstances."

In *McIlroy Bank*, we relied on several cases from other jurisdictions to support our ruling. In *Burnaman v. Heaton*, 240 S.W.2d 288 (Tex. 1951), a rule of civil procedure required any settlement agree-

ment to be "in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." 240 S.W.2d at 290-91. The agreement in that case was overturned because one of the plaintiffs was in the hospital at all times, and was never present in the courtroom during the settlement negotiations. The Texas Supreme Court held that the court had the duty to make sure all parties agreed to the settlement before entering the order.

*Van Donselaar v. Van Donselaar*, 87 N.W.2d 311 (Iowa 1958), also cited in *McIlroy Bank*, held that the court could not enter a judgment based on a settlement agreement when it had been advised that one of the parties either denied the agreement, repudiated it, or for any other reason was no longer consenting to the judgment. 87 N.W.2d at 314. That decision was overruled by the Iowa Supreme Court in *In the Matter of the Property Seized on or About November 14-15, 1989*, 501 N.W.2d 482 (1993):

> To the extent that our decision in *Van Donselaar v. Van Donselaar*, 249 Iowa 504, 87 N.W.2d 311 (1958), suggests that consent to judgment may be withdrawn as of right at any time prior to actual entry of judgment, that view is now specifically disapproved. We have recognized that a stipulation for disposition of an entire issue is entitled to all of the sanctity of an ordinary contract if supported by legal consideration. *Graen's Mens Wear*, 329 N.W.2d at 300. [*Graen's Mens Wear, Inc., v. Stille-Pierce Agency*, 329 N.W.2d 295 (Iowa 1983)].

501 N.W.2d at 485. And, more recently, the Iowa Supreme Court stated in *In re the Marriage of Ask and Ask*, 551 N.W.2d 643 (Iowa 1996):

> A party is not entitled as a matter of right to withdraw a stipulation for disposing of an entire issue at any time before actual entry of judgment. Such stipulations are entitled "to all of the sanctity of an ordinary contract if supported by legal consideration."

551 N.W.2d at 646. (Citations omitted.)

In *McIlroy Bank*, we also cited *Overton v. Overton*, 129 S.E.2d 593 (N.C.1963), for its statement that "A consent judgment rendered without the consent of a party will be held inoperative in its entirety." 129 S.E.2d at 598. However, that case included a party who had been declared *non compos mentis*, and whose consent to the

judgment was given by a *guardian ad litem* who had been appointed for her.

We are now convinced that our language in *McIlroy Bank, supra*, was overly broad. In *Grumbles v. Grumbles*, 238 Ark. 355, 381 S.W.2d 750 (1964), during a divorce hearing, the parties conferred, and reached an agreement on the division of property. They returned to court, and appellant informed the judge that an agreement had been reached, stated the terms thereof, and the court approved the agreement. When the prepared precedent was presented to the court, appellant objected to it being entered as a decree, not because it did not embrace the agreement as made, but because appellant had apparently changed her mind. In affirming the entry of a judgment according to the recorded agreement, the Arkansas Supreme Court stated that the agreement appeared to be fair to both sides, and that, under the circumstances, the trial court had the discretion to overrule appellant's objection to entering the decree to which appellant had previously consented, and that the court had not abused its discretion.

Clearly, *Grumbles* stands for the proposition that the trial judge has the discretion to enter a judgment based on a settlement agreement read into the record, even over the objection of a party, at least when it appears there is no disagreement as to the terms of the agreement. That rule is clearly applicable here. There is no disagreement in this case that the January 11, 1999, order accurately reflected the agreement of the parties as it was read into the record in open court. Furthermore, the judge specifically asked the appellant if she agreed to the settlement agreement and appellant stated that she did. When it was dictated into the record of the hearing, it became valid and binding on all parties. "The fact that appellant entered into an agreement which later appeared improvident to her is no ground for relief." *Helms v. Helms*, 317 Ark. 143, 875 S.W.2d 849 (1994). We hold that the chancellor did not abuse her discretion in entering the judgment in the case at bar. Although we believe the result we reached in *McIlroy Bank* was correct, our language went too far. To the extent that it conflicts with *Grumbles* and with our opinion here, *McIlroy Bank* is overruled.

Affirmed.

JENNINGS and MEADS, JJ., agree.