Martha Ann RUTHERFORD *v.* Donald R. RUTHERFORD

CA 02-551                                         98 S.W.3d 842

Court of Appeals of Arkansas
Division I
Opinion delivered March 5, 2003

*Dick Jarboe,* for appellant.

*William David Mullen,* for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Martha Ann Rutherford, argues that the trial court erred in refusing to enforce a marital separation agreement that she and appellee, Donald Rutherford, entered into. The separation agreement was filed on the same date as the complaint for divorce. While the trial judge granted appellee a divorce, he declined to enforce the agreement between the parties, finding that appellant had breached the agreement. Further, the trial judge accepted appellee's contentions that appellant used undue influence, duress, and fraud in the inducement to obtain appellee's consent to the agreement. We conclude that the trial court properly refused to enforce the agreement.

After more than ten years of marriage, appellee filed a complaint for divorce on June 21, 2001, that provided in part that the parties and their attorneys had executed and filed a separate "waiver, entry of appearance, agreement, and stipulation" (hereinafter "settlement agreement") for the trial court's consideration and approval. The agreement provided, among other things, for a division of the parties' property upon divorce. Although no answer was filed, appellant did file a counterclaim requesting that the court enforce the property-settlement agreement, which was signed by both parties and approved by their attorneys. Before the case was presented, appellee filed a withdrawal of agreement and petition for an equitable property division on January 25, 2002.

Following a hearing on March 4, 2002, the trial court entered a divorce decree on April 10, 2002. The court refused to incorporate the June 2001 settlement agreement that divided the personal property, gave appellant the marital home, required appellee to pay the outstanding indebtedness owed on the home, and gave appellee seven acres of "hill ground." Instead, the trial

court determined that the property was incapable of division, and with the exception of personal jewelry and clothing, all real and personal property was to be sold by the clerk of the court with the proceeds to be applied to the payment of marital debts and any remainder to be split equally between the parties. From that order comes this appeal.

■■ Our standard of review in this case is *de novo*. *Dalrymple v. Dalrymple*, 74 Ark. App. 372, 47 S.W.3d 920 (2001). In *Middleton v. Lockhart*, 344 Ark. 572, 43 S.W.3d 113 (2001), our supreme court concluded that a court of equity is a court of conscience and it should consider the relative position of the parties and "render a decree that does substantial justice to all." We will not reverse the chancellor unless his findings are clearly erroneous. *Bagwell v. Bagwell*, 282 Ark. 403, 668 S.W.2d 949 (1984). Further, the supreme court has "gone on to say that under ARCP Rule 52 we will not reverse the [C]hancellor's division of property in divorce unless that division can be said to be clearly against the preponderance of the evidence." *Id.* at 406, 668 S.W.2d at 951 (citing *Russell v. Russell*, 275 Ark. 193, 628 S.W.2d 315 (1982)). Due deference is given to the chancellor's superior ability to determine the credibility of the witnesses and the weight to be accorded their testimony. *Dalrymple, supra* (citing *Hunt v. Hunt*, 341 Ark. 173, 15 S.W.3d 334 (2000)).

For her sole point on appeal, appellant contends that the trial court erred in refusing to enforce the June 2001 settlement agreement as part of the divorce decree. Appellant argues that the motivating force in appellee's desire to obtain a divorce was that he was involved with another woman. In support of her argument, appellant directs our attention to appellee's testimony that his attorney prepared the settlement agreement because appellee wanted out of the marriage and that appellee had an opportunity to ask his attorney's advice before signing. Appellee testified that nothing else influenced him to consent to the agreement other than the fact that he "wanted out of the marriage." Moreover, appellant notes that appellee stated that he knew that she was "getting more under the agreement" than he was at the time he signed it. Appellant concludes that appellee's testimony belies any claim

of undue influence, duress, or fraud in the inducement by appellant.

According to the settlement agreement, appellee was to receive the washer and dryer from the parties' prior home. Referring to the appliances, appellee testified that appellant threatened to "cut it up" before he would get them. He testified that following the execution of the agreement, appellant slashed the tires on the trailer he had used to move his personal property and that she broke into his house and cut the hoses off the washer and dryer, broke the commode, and left the faucet on the bathtub running. Appellant admitted at the hearing that she pled guilty to the charges of DWI and disorderly conduct after she had broken into appellee's home and damaged the washer and dryer. Moreover, appellant admitted to cutting appellee's tires but asserted that she paid appellee for the damage he had incurred as a result of her actions.

Appellee also testified that he was influenced to consent to the agreement because appellant threatened to burn the house if she did not receive the home in the settlement agreement. Appellee stated that he was actually concerned that appellant would in fact burn down the house because she had burned their previous home. In testimony concerning the previous fire, appellee stated that appellant told him that she would "burn it to the ground," and he stated that she set fire to that house while he went to Black Rock to visit her father.

Jamie Lois Ellis, an acquaintance of appellant, testified that she spoke with appellant two or three days after the agreement was signed. According to Ellis, appellant told her that after getting drunk she broke into appellee's house, and tore up the washer and dryer. Further, appellant told Ellis that she "broke the contract and was afraid she was going to lose everything." Ellis's testimony reflects that she was aware that the parties' previous house had burned. Ellis stated that appellant told her after the parties had separated that "she used lighter fluid and set the house on fire."

Appellant, however, testified that she "accidently left grease on the stove and went outside and . . . burnt [the] house by leaving grease on the stove." Appellant noted that no charges were

filed in connection with the fire, and that she and appellee did not collect insurance for the damage.

In the divorce decree, the trial court found that appellee anticipated an easy, inexpensive, and uncontested divorce pursuant to the terms of the settlement agreement. In refusing to incorporate the agreement into the divorce decree, the trial court found that appellant had substantially breached the terms of the agreement less than ten days after its execution and before any approval by the court. Moreover, the trial court accepted appellee's contentions that undue influence, duress, and fraud in the inducement were exerted by appellant to obtain the agreement.

The question presented by this appeal is whether an agreement of the parties may usurp the authority of the court to divide the marital property before a divorce is granted. Arkansas Code Annotated section 9-12-315 (Repl. 2002) clearly directs that all marital property shall be distributed at the time the decree of divorce is entered. That statute defines marital property as "all property acquired by either spouse subsequent to the marriage except: . . . property excluded by valid agreement of the parties."

Neither appellant nor appellee has cited any cases where the trial court refused to accept a property-settlement agreement and incorporate it into the divorce decree. Appellant relies on *Helms v. Helms*, 318 Ark. 143, 875 S.W.2d 849 (1994), and *Carden v. McDonald*, 69 Ark. App. 257, 12 S.W.3d 643 (2000), to support her first argument. However, both of these cases involve post-decree requirements for modifying agreements that had been incorporated into the divorce decree. In *Helms*, our supreme court held that in the absence of fraudulent inducement in executing an integrated property settlement agreement, a divorce decree may not be judicially modified. *Id.* The court further stated that the fact that the husband had entered into an agreement which was not to his liking was no ground for relief. *Id.* Likewise, appellant cited *Carden* for the proposition that one party's displeasure with an agreement that she had previously entered into is no ground for relief.

Appellant relies on Arkansas Code Annotated section 9-12-313 (Repl. 2002) as authority for the proposition that the court

should enforce a valid agreement of the parties. Section 9-12-313 provides in part that a court "may enforce the performance of a written agreement between husband and wife made and entered into in contemplation of either separation or divorce and decrees or orders for alimony and maintenance by sequestration of the property of either party."

■ However, in *Womack v. Womack*, 16 Ark. App. 108, 110, 697 S.W.2d 930, 931 (1985), this court discussed two cases in which the supreme court explained that it was not bound by the parties' agreement in a divorce action:

> In *Pryor v. Pryor*, 88 Ark. 302, 114 S.W. 700 (1908), the court said: "The court is not, in the first instance, bound by the agreement of the parties concerning the amount of alimony to be allowed to the wife." The Court explained the matter in this way: "This is so because the court is moved to action by principles of justice and equity, and is not bound to follow the agreement of the parties against what appears to be the justice of the case."

In *Bachus v. Bachus*, 216 Ark. 802, 227 S.W.2d 439 (1950), the court said:

> The parties to a divorce action may agree upon the alimony or maintenance to be paid. Although the court is not bound by the litigants' contract, nevertheless if the court approves the settlement and awards support money upon that basis there is then no power to modify the decree at a later date.

Further, we note that in *McCue v. McCue*, 210 Ark. 826, 832, 197 S.W.2d 938, 941 (1946), our supreme court stated, "[C]ertainly the Court is not bound by an agreement [that a] disputing husband and wife may enter into, in order to terminate a controversy; and this is true even in the absence of fraud or coercion."

■ In our view, the court is not bound by a stipulation entered into by the parties: rather, it is within the sound discretion of the court to approve, disapprove, or modify the agreement. Arkansas Code Annotated section 9-12-313 merely provides the court with the means to enforce an agreement entered into and approved by the court and does not limit the court's discretion to accept or reject the agreement of the disputing parties. Even so,

the trial court in exercising its discretion in the division of property matters must consider the factors set out in section .9-12-315. Thus, based on the evidence in this case, we cannot say that the trial court's refusal to enforce the settlement agreement was clearly erroneous.

In view of our holding, we do not address appellant's second argument that appellee's consent was not the result of undue influence, duress, or fraud in the inducement. Therefore, we affirm.

Affirmed.

PITTMAN and GLADWIN, JJ., agree.