William Robert FIELDS *v.* Patrice Anne FIELDS

CA 03-1405                                    198 S.W.3d 123

Court of Appeals of Arkansas
Opinion delivered November 10, 2004

*Shemin & Hendren, PLLC*, by: *Kenneth R. Shemin* and *Jennifer B. Hendren*, for appellant.

*Pettus Law Firm, P.A.*, by: *E. Lamar Pettus* and *Donna C. Pettus*, for appellee.

JOHN B. ROBBINS, Judge. Appellant William R. Fields and appellee Patricia Ann Fields were divorced by a decree dated July 19, 1999, and entered on September 2, 1999. The divorce decree ordered an equal division of the parties' extensive assets. On November 2, 1999, Ms. Fields filed a petition for contempt and to show cause, and on August 18, 2000, a petition for contempt and modification. A hearing was held on January 29, 2001, and on March 5, 2001, the trial court entered an order continuing the case pending an audit to be conducted by a qualified auditor selected by agreement of the parties. On August 21, 2001, Ms. Fields filed another motion for contempt, to show cause, and for modification.

At a hearing held on April 7, 2003, Jack Bottoms, a certified public accountant selected by the parties, gave testimony relating to his analysis of how the assets should be divided. In conducting his accounting, Mr. Bottoms reviewed a twenty-one-page proposed order that had previously been agreed on by the parties. The paragraph of the proposed order pertaining to Mr. Fields's IRA provides:

> The William Fields IRA (Retirement) was valued at $2,261,984.98, as of July 19, 1999, and Ms. Fields is entitled to fifty percent (50%) of said sum or $1,130,992.49 plus interest at ten percent (10%) per annum from and after July 19, 1999, to the date of transfer to Ms. Fields's account which transfer occurred on February 3, 2000. Interest from and after July 19, 1999, to December 30, 1999, was $50,817.04 ($309.86 per day for 164 days). The sum of $1,181,809.53 should have been transferred to Ms. Fields as of December 30, 1999. Since the transfer did not occur until

February 3, 2000, an additional interest of $10,535.24 ($309.86 per day for 34 additional days to February 3, 2000) should have been transferred to Patricia Fields as of February 3, 2000, which sum will accrue interest at the rate of ten percent (10%) from and after February 4, 2000. On February 3, 2000, Mr. Fields transferred the sum of $1,275,163.10 into Ms. Fields' IRA for which Mr. Fields is entitled to credit.

Mr. Bottoms testified that he left the February 3, 2000, IRA transfer of $1,275,163.10 totally off of his accounting because the assets were transferred in a like-kind exchange. He thus concluded that Mr. Fields was not entitled to any credit for the transfer.

On August 12, 2003, the trial court entered the order from which Mr. Fields now appeals.[1] On appeal, Mr. Fields takes issue with two of the trial court's findings. First, he argues that the trial court erred in accepting Mr. Bottoms's accounting to the extent that no credit was awarded for the February 3, 2000, IRA transfer. Next, Mr. Fields argues that the trial court erred in requiring him to pay the entire $11,129.30 fee charged by Mr. Bottoms, where the parties had expressly agreed to each pay half. We affirm on the first point, but we reverse the trial court's decision to the extent that it holds Ms. Fields responsible for the entire accounting fee.

Mr. Fields's first argument is that the trial court erred in refusing to enforce the parties agreement pertaining to division of the IRA. He argues that it is clear that the parties did not intend for the transaction to be treated as a like-kind distribution, and that the trial court was bound to accept their agreement that Ms. Fields was only entitled to interest on the sum of the IRA as of July 19, 1999, through the February 3, 2000, date of distribution. Mr. Fields notes that the parties specifically agreed in writing that he would be given credit for the overpayment when he transferred $1,275,163.10 into Ms. Fields's IRA account.

---

[1] The appellee argues that the order being appealed from was not a final, appealable order, and thus that this appeal should be dismissed. She asserts that there are unresolved issues, which include final division of certain stocks and allocation of the marital debt. However, we disagree because the order resolves these issues. For an order to be final, it must not only decide the rights of the parties, but also put the court's directive into execution, ending the litigation or a separable part of it. *Capitol Life & Accident Ins. Co. v. Phelps,* 72 Ark. App. 464, 37 S.W.3d 692 (2001). When an order appealed from reflects that further proceedings are pending that do not involve merely collateral matters, the order is not final. *Id.* Applying these standards, we have concluded that any potential further proceedings are collateral in nature and that the August 12, 2003, order is final for purposes of appeal.

■ ■  We do not agree that the trial court committed reversible error when it deviated from the parties' agreement on the distribution of Mr. Fields's retirement account. The trial court is not bound by a stipulation entered into by the parties, and it is within the sound discretion of the trial court to approve, disapprove, or modify an agreement. *Rutherford v. Rutherford*, 81 Ark. App. 122, 98 S.W.3d 842 (2003). The parties came to disagree on some of the terms of the twenty-one-page proposed order, and the order was never signed or entered by the trial court. The divorce decree provided, "Any stock held in the [IRA] shall be divided by reference to date of purchase and costs. The division will be an In kind division of stocks and cash." Mr. Fields failed to distribute one-half of the IRA account, as directed by the divorce decree, until more than six months after the decree was entered. Under the trial court's interpretation of its decree, Ms. Fields was entitled to one-half of the value of the IRA at the time of distribution. We think the trial court's interpretation was reasonable, and under the facts of this case we hold that it did not abuse its discretion in failing to give Mr. Fields credit for any overpayment.

Mr. Fields's second argument is that the trial court erred in ordering him to pay the entire accounting fee charged by Mr. Bottoms. We agree. At the January 29, 2001, hearing, appellee's attorney stated to the court, "We are going to agree to employ a certified public accountant" who "will be paid by the parties." On July 23, 2001, appellee's attorney sent a letter to appellant's attorney requesting that appellant pay half of the existing fees. At the April 7, 2003, hearing, appellee's attorney asked the trial court to address the accounting fees, appellant's attorney responded, "There's no question we're obligated to pay half of those," and appellee's counsel answered, "That's fine." Even after the trial court issued a letter opinion requiring Mr. Fields to pay the entire fee, Ms. Fields responded to Mr. Fields's motion for reconsideration and asserted:

> Mr. Bottoms clearly understood he was not working one side of the case.
>
> The settlement agreement, which previously [appellant's counsel] argued did not exist, now he wants to argue does exist. The agreement, if accepted, provided among other things for an equal division on the accountant fees.
>
> One of the Exhibits introduced as evidence is a Transcript in which [appellant's counsel] agreed Mr. Fields would pay one-half of

the accountant's fees while the work was in progress; however, Mr. Fields never paid and only pays when forced to pay.

Ms. Fields consistently agreed to pay half of the fees, and never asked the trial court to rule otherwise.

■■ While a trial court may refuse to enforce a parties' agreement, a trial court's decision cannot be arbitrary or groundless. *See Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). In this case the parties repeatedly agreed to each pay half of the fees because Mr. Bottoms was hired by the parties and was working for both sides. The trial court gave no explanation for deviating from the agreement, and we see no rational basis for its action in this regard. We hold that the trial court's decision requiring Mr. Fields to pay the entire accounting fee was arbitrary and groundless, and amounted to an abuse of discretion.[2] Therefore, we remand to the trial court with instructions to enter an order requiring each party to pay half of the accounting fees.

Affirmed in part; reversed and remanded in part.

STROUD, C.J., GRIFFEN, and VAUGHT, JJ., agree.

HART and BAKER, JJ., concur in part; dissent in part.

KAREN R. BAKER, Judge, dissenting. I agree with the majority that the trial court did not err in refusing to enforce an alleged agreement between the parties that was not accepted and adopted by the court, that the parties never signed, and that the complete terms of which were never agreed on by the parties. However, the majority is clearly wrong when it goes on to find that the trial judge erred by failing to enforce a single provision of this twenty-one page proposed agreement and does so by stating that "[t]he trial court gave no explanation for deviating from the agreement, and we see no rational basis for its action in this regard."

The majority is wrong for three reasons: (1) the parties did not request specific findings pursuant to Rule 52 of the Arkansas Rules of Civil Procedure, and therefore, we cannot reverse for the court's failure to set out its reasoning; (2) the parties never agreed

---

[2] The dissenting opinion suggests that we err in reversing a finding of contempt by the trial court. Although Ms. Fields sought a finding of contempt in this matter, the trial court did not address the issue of contempt. Consequently, neither do we.

to the language that would define their rights and obligations under the proposed settlement, and a trial court cannot make the agreement for them; and (3) the trial court's order that, in part, ordered the accountant's fees to be paid by Mr. Fields, resulted from a contempt petition filed due to Mr. Fields's failure to divide the property as ordered in the parties' divorce decree, and the trial judge did not abuse her discretion in exercising the court's inherent authority to enforce its own order.

This dispute arises from the disposition of a hearing held on April 7, 2003, where the court was asked to rule on a petition for contempt and order to show cause filed November 2, 1999, a petition for contempt and for modification filed August 18, 2000, and a petition for contempt of court, order to show cause, and for modification filed August 21, 2002. These petitions were filed by Patrice Fields to enforce rights decreed to her in the parties' divorce on September 2, 1999. By the time the trial judge rendered her opinion now appealed by Mr. Fields, almost three years had passed since the trial court had entered the order for which Mrs. Fields sought enforcement.

First, the majority is wrong to reverse the trial court because the parties did not request specific findings of fact and conclusions of law supporting the trial court's finding that Mr. Fields should pay the entire accountant fee. Our law does not require that a decree recite specific facts or conclusions of law on the issues presented and permits a trial court sitting as a jury to decide a case without stating its findings of fact separately. Rule 52 (a) of the Arkansas Rules of Civil Procedure affords a litigant a right to *request* specific findings of the trial court. However, failure to make a timely request for separate findings constitutes a waiver of that right. *Legate v. Passmore,* 268 Ark. 1161, 1162, 559 S.W.2d 151, 152 (Ark. App. 1980) (holding that parties' could not construe trial court's statement to be exclusive of other legal conclusions he might have reached in determining his verdict and judgment). Here, the parties made no request for findings of fact and are in no position to complain that the court did not make them. Neither can we reverse the trial judge's order because she "gave no explanation" when no explanation was required or requested by the parties.

Second, the parties never entered into an enforceable agreement. The majority thus finds that the trial court erred in failing to enforce a single provision of an agreement that the parties never had. The parties attached a transcript of a recorded conversation

memorializing their "settlement." The most significant evidence that the parties' agreement was in theory only is the statement by counsel for Mr. Fields at the close of the proposal that "we will transfer the money within two (2) business days after the execution of the agreement." No agreement was executed and no transfer of money took place. It is not within the judicial province to make private agreements. *See Rector-Phillips-Morse, Inc. v. Vroman*, 253 Ark. 750, 489 S.W.2d 1 (1973).

Third, "the Court is not bound by an agreement [that a] disputing husband and wife may enter into, in order to terminate a controversy; and this is true even in the absence of fraud or coercion." *McCue v. McCue*, 210 Ark. 826, 832, 197 S.W.2d 938, 941 (1946); *Rutherford v. Rutherford*, 81 Ark. App. 122, 98 S.W.3d 842 (2003). The trial court's order, including the provision requiring that the accountant fee be paid by Mr. Fields, was entered to enforce the court's previously entered divorce decree upon the petition of Ms. Fields for enforcement by contempt.

A court's contempt power may be wielded not only to preserve the court's power and dignity and to punish disobedience of the court's order but also to preserve and enforce the parties' rights. *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001). Where a party is punished for civil contempt, we will not reverse the trial court's order unless it is arbitrary or against the weight of the evidence. *Id.* It is a well established rule that the power to judge a contempt rests exclusively with the court contemned. *See Harrison v. Harrison*, 239 Ark. 756, 394 S.W.2d 128 (1965). A court must be able to enforce its judgments in order to retain its authority to act. *Smith v. Credit Serv. Co.*, 339 Ark 41, S.W.3d 69 (1999). By reversing the trial court's allocation of costs in the context of a petition for contempt, the majority disregards this standard and in so doing undermines the authority of the trial court to enforce its own orders.

For these reasons, I dissent from the majority's reversal of the trial court's judgment ordering Mr. Fields to pay all of the accountant's fees. I am authorized to state that Judge Hart joins this dissent.