

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-478

| | | |
|---|---|---|
| | | **Opinion Delivered** December 17, 2014 |
| JOHN WALLS, JR. | APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [No. 16DR-12-825] |
| V. | | |
| DOROTHY JEAN WALLS | | HONORABLE VICTOR HILL, JUDGE |
| | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant John Walls, Jr., appeals two decisions rendered by the Circuit Court of Craighead County in his divorce case against his former wife, appellee Dorothy Jean Walls: (1) the court's denial of his motion to enforce a Marital Dissolution Agreement ("MDA"), and (2) the manner in which the court divided the parties' bank accounts. We affirm.

The parties were married on February 14, 2004. While living in Memphis, Tennessee, in 2009, the parties separated. On March 2, 2009, John filed for divorce in Tennessee. After the divorce action was commenced, and in anticipation of the divorce, the parties entered into the MDA, which provided for the distribution of their assets. The MDA bears the style and case number of the Tennessee divorce case, and there is no dispute that the parties entered the MDA in anticipation of what they believed to be an imminent divorce. However, in December 2009, the parties reconciled and ceased prosecuting their divorce action. John testified that, after the reconciliation, he continued to perform all of his obligations under the MDA, including paying

Dorothy money as required by the MDA. The parties separated again in 2011, although Dorothy claims they continued to see each other. John voluntarily nonsuited the Tennessee case in 2012.

In September of 2012, Dorothy filed a suit for separate maintenance in Arkansas, where she resided. John counterclaimed for absolute divorce. In November 2013, the trial court held a two-day bench trial regarding the distribution of the couple's assets. John argued that the 2009 MDA was still a valid and binding contract and should control the distribution of assets in the current divorce. The trial court disagreed, finding that the contract was entered into in anticipation of the Tennessee divorce and became a nullity when the parties reconciled and dismissed that divorce action. The trial court then divided the couple's assets, treating only one of the parties' bank accounts as a marital asset (the joint account used by both parties, which John claimed as his own nonmarital property). The court did not divide Dorothy's two bank accounts, which were in her name only and under her sole control, because it did not deem them to be marital property. The court equally divided all property that it deemed to be marital property. This appeal followed.

"With respect to the division of property in a divorce case, the appellate court reviews the trial court's findings of fact and affirms them unless they are clearly erroneous." *Coatney v. Coatney*, 2010 Ark. App. 262, at 7, 377 S.W.3d 381, 385 (citing *Rasberry v. Rasberry*, 2009 Ark. App. 594, 331 S.W.3d 231). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.* (citing *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007)). "We give due deference to the

2

trial court's superior position to determine the credibility of witnesses and the weight to be given their testimony." *Id.*

We explained in *Coatney* that Arkansas Code Annotated section 9-12-315(a) mandates that all marital property is to be divided equally between the parties unless the trial court finds that such a distribution would be inequitable. 2010 Ark. App. 262, at 5–6, 377 S.W.3d at 384. In that event, the court is to make some other division that the court deems equitable, taking into consideration a number of factors: the length of the marriage; age, health, and station in life of the parties; occupation of the parties; amount and sources of income; vocational skills; employability; estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; contribution of each party in acquisition, preservation, and appreciation of marital property, including services as a homemaker; and the federal income tax consequences of the court's division of property. Ark. Code Ann. § 9-12-315(a) (Repl. 2009). "We have consistently interpreted section 9-12-315(a) as granting the trial court broad powers in distributing both nonmarital and marital property." *Farrell v. Farrell*, 365 Ark. 465, 473, 231 S.W.3d 619, 625 (2006). The overriding purpose of section 9-12-315(a) is to enable the court to make a division of property that is fair and equitable under the specific circumstances of each case. *Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001). The statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Copeland v. Copeland*, 84 Ark. App. 303, 139 S.W.3d 145 (2003).

John's first argument on appeal is that the trial court erred by not enforcing the provisions of the MDA, which he argues is a valid, enforceable, and binding contract. The trial

3

court rejected this argument, ruling that the MDA was a nullity due to the substantial change in circumstances since it was executed. Arkansas law explicitly permits the trial court to make such a determination. It is well-settled law that, although divorcing spouses may enter into property settlement agreements, the court is not bound to accept or enforce them, even in the absence of fraud or coercion. In *Rutherford v. Rutherford*, 81 Ark. App. 122, 98 S.W.3d 842 (2003), we directly addressed this issue, stating that Arkansas Code Annotated section 9-12-313 does not stand for the proposition that a court must enforce a valid agreement of the parties. Instead, the statute "provides in part that a court '*may* enforce the performance of a written agreement between husband and wife made and entered into in contemplation of either separation or divorce and decrees or orders for alimony and maintenance by sequestration of the property of either party.'" *Rutherford*, 81 Ark. App. at 127–28, 98 S.W.3d at 845 (emphasis added). The Arkansas Supreme Court has explained that trial courts are not bound by the parties' agreement in a divorce action. In *Pryor v. Pryor*, 88 Ark. 302, 308, 114 S.W. 700, 702 (1908), the supreme court said that a trial court "is not, in the first instance, bound by the agreement of the parties concerning the amount of alimony to be allowed to the wife." The court explained that "this is so because the court is moved to action by principles of justice and equity, and is not bound to follow the agreement of the parties against what appears to be the justice of the case." *Id.* at 308-09. In *Bachus v. Bachus*, 216 Ark. 802, 803, 227 S.W.2d 439, 440 (1950), the court said,

> The parties to a divorce action may agree upon the alimony or maintenance to be paid. *Although the court is not bound by the litigants' contract*, nevertheless if the court approves the settlement and awards support money upon that basis there is then no power to modify the decree at a later date.

(Emphasis added.) In *Rutherford*, this court reiterated that, pursuant to the permissive language of section 9-12-313 and the relevant case law, trial courts may use their discretion to disregard the parties' agreement if equity so demands.

In this case, the trial court found that, due to the subsequent reconciliation, passage of time, and later-acquired property, equity demanded that the MDA be deemed null and void. However, the court specifically stated that it would take into account all payments and performance made pursuant to the terms of the MDA when determining the final distribution of assets, and John has not argued that he was not given proper credit for the payments he made pursuant to the agreement. We have no evidence indicating that the trial court's ruling was clearly erroneous; it was well within the court's discretion to reject the MDA due to changed circumstances. We affirm the court's ruling on this point.

John next argues that the trial court erred in dividing the parties' bank accounts by providing Dorothy more than half of the assets in the accounts and basing the account valuation on a date other than the date of the divorce decree. John failed to preserve any objection to the valuation date, so we cannot address that issue. As to the division of the accounts, we see no error. Arkansas law creates a presumption that property placed in both spouses' names is held in tenancy by the entirety and is marital property. *McKay v. McKay*, 340 Ark. 171, 177, 8 S.W.3d 525, 529 (2000). John claimed an account at First National Bank as nonmarital property, arguing that some of the deposits to the account originated in nonmarital sources. However, the account bore both parties' names, and Dorothy had also made deposits to, and withdrawals from, the account. The trial court treated this account as marital property and awarded Dorothy

5

$44,166.71, which was half of the total amount in the account. By contrast, the accounts Dorothy claimed as her nonmarital property were held in her name only, and she alone exercised control over them. The court deemed those accounts nonmarital property and did not divide them. Given the court's overall property distribution, we find no clear error. The court's decision complies with the statutory requirement that all marital property be equally divided. Ark. Code Ann. § 9-12-315(a).

Affirmed.

HARRISON and BROWN, JJ., agree.

*Womack, Phelps & McNeill, P.A.*, by: *Ryan M. Wilson*, for appellant.

*Martine E. Lilly*, for appellee.