Cite as 2025 Ark. App. 590

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-24-527

| | |
|---|---|
| JUAN GOMEZ<br><br>APPELLANT<br><br>V.<br><br>LUCILLA VELAZQUEZ DE GOMEZ<br>APPELLEE | Opinion Delivered December 10, 2025<br><br>APPEAL FROM THE POPE COUNTY CIRCUIT COURT<br>[NO. 58DR-21-342]<br><br>HONORABLE GORDON W. "MACK" MCCAIN, JR., JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Juan Gomez appeals the Pope County Circuit Court's decree divorcing him from his former spouse, Lucilla Velazquez de Gomez. On appeal, Juan argues that the circuit court abused its discretion by denying his motion to approve their settlement agreement. Lucilla did not file a response. We affirm.

Juan and Lucilla married in 1984. On June 1, 2021, Juan filed a divorce complaint against Lucilla. On July 7, Lucilla answered and counterclaimed for divorce. On February 21, 2024, the circuit court held a pretrial hearing and issued a scheduling order setting trial for April 16 by Zoom. The court noted that both parties required Spanish-speaking interpreter services.

On April 16, the parties appeared for the trial, and both parties utilized interpreter services. At the beginning of the hearing, the court recessed so that the parties could discuss a settlement agreement.

After the recess, the parties informed the court that they wanted to proceed with the trial, and Juan's attorney stated that the only issue for the court to decide was the division of their property and debts.[1] He explained that the parties had three pieces of real property with one property in Mexico and two properties in Arkansas. He stated that the parties did not dispute whether the properties were marital or nonmarital, and he noted that Juan had inherited the Mexican property but that they agreed that improvements made during the marriage were marital property.

He further stated that

> [t]he only reason that we are here proceeding is that [Lucilla] may be making a decision that is contrary to her financial wellbeing and that is why [her attorney] has been very clear and has attempted to explain the consequences of everything specifically to her. So we, the attorneys do not have any issues. We are presenting the information and just the background information that will not be adverse to [Lucilla]'s financial interest in the long term.

The court responded, "As both [c]ounsel know, my normal approach is when there is no agreement to divide something equally is to sell it . . . it is not a sale through a real estate agent, it will be an auction."

Juan's attorney then informed the court that he wanted to offer Juan's testimony that Juan was willing to give Lucilla one of the two properties in Arkansas, sell the Mexican

---

[1] The parties did not have minor children and did not contest the grounds.

property, and divide the marital proceeds. Lucilla objected to the testimony because it was part of the proposed settlement agreement.

The court then again stated, "If there is no agreement, the property is sold at auction and the parties split the proceeds." Juan's attorney asserted that the parties would suffer financially from the costs associated with the auction. The court acknowledged the costs but stated that "it can't be helped when we are stuck with property that can't be divided," and "the best way [the court] can divide a piece of property is to have it sold at a public sale through an auction." Lucilla did not object and stated, "[T]hat actually resolves all of the property issues."

The court explained the auction procedure and stated, "Once that goes in, it's not going to be undone. So, any subsequent agreement is not going to be considered by the court." The court recessed again and gave the parties another thirty minutes to discuss a resolution. The court noted it "would rather the parties come to an agreement."

After the second recess, Juan's attorney informed the court that Juan agreed to pay Lucilla one-half of $23,988.80 for marital improvements on the Mexican property and that the sum would be paid from his portion of the auction proceeds.[2] The parties were unable to agree about the other property. The court and parties then discussed the extent of the

---

[2]Juan had the property appraised, and Lucilla did not object to the appraisal.

property and debt, which included the Mexican property, two Arkansas properties,[3] a manufactured home, two vehicles, and a tractor.

Juan testified and explained that he had inherited the Mexican property from his grandfather. He stated that improvements had been made to the property during the marriage totaling $23,988.80. He stated that he would pay one-half of $23,988.80 to Lucilla from the proceeds of the auction of the Arkansas properties. He also testified that he understood that the court was ordering that the Arkansas properties be auctioned.

Lucilla testified and acknowledged that she would receive about $12,000 representing her share of the Mexican property from Juan's share of the auction proceeds of the Arkansas properties. She further acknowledged that the Arkansas properties would be sold at a public auction and that the proceeds would be equally divided after the auction expenses.

Following the hearing, on April 24, the court entered an order of sale of personal and real property at public auction. Specifically, the court ordered that a vehicle, a tractor, a mobile home, and the two real properties in Arkansas be sold.[4]

On April 25, the court emailed the parties, and the email was filed on the record that day. The court stated that it had received text messages from Juan's attorney stating that the parties now want to settle and that they were "coming in today or tomorrow" to sign the agreement. The court explained that to avoid an undue burden on the auction company, it

---

[3]The parties stated that the two Arkansas properties were mortgaged in the amount of approximately $90,000.

[4]The order stated the tentative auction date as "TBD."

4

had verbally instructed the company to delay setting an auction date. The court stated that it would delay directing the auction company to proceed until (1) the time for a motion for reconsideration expires, (2) both parties formally waive their right to file a motion for reconsideration, (3) the motion is filed and ruled on, or (4) another posttrial relief is sought and addressed.

On April 29, the court emailed the parties and stated that it had not received a response from its April 25 email, and it reminded the parties to update the court on their intentions. The same day, Juan's attorney responded that he and Lucilla's attorney had drafted a proposed agreement, but they needed more time to meet with their clients. He noted that they had to meet their clients in person with translators.

On May 9, the court emailed the parties again, and the email was filed of record that day. The court stated it would lift the moratorium on the auction process on May 15, but it did not intend to alter the time for a reconsideration motion.

On May 10, the parties tendered a settlement agreement in which the parties agreed that Juan would receive the Mexican property and one of the Arkansas properties and that Lucilla would receive the other Arkansas property. The settlement agreement further provided that "[i]n order to equalize the value of the property allocated," the parties agreed that Juan would "obtain the release of [Lucilla] and [her Arkansas property] from any liability for the outstanding mortgage debt" and that Juan would pay Lucilla an additional $30,000. The parties also agreed that Juan would receive a vehicle and the tractor and that Lucilla would receive a vehicle.

On May 15, Juan moved for approval of the property settlement agreement and to vacate the auction order. He noted that the court had not entered the divorce decree, and he asserted that settlements are favored in the law and conserve judicial resources. He further argued that if the auction proceeded, the parties would experience significant financial hardship that would constitute a miscarriage of justice. He pointed out that the court's auction order awarded the auctioneer a 10 percent buyer's premium for their real property, a 10 percent auction fee for their personal property, and $2,500 in advertising fees and costs. He further asserted that they would experience significant interest expenses and borrowing costs to purchase their own assets at the auction and that they could be precluded from bidding due to lending requirements.

On May 23, the court entered a five-page order denying Juan's motion to approve the settlement agreement and to vacate the auction order. The court stated that at the pretrial hearing, it had advised the parties that "the failure to reach an agreement before trial would result in the sale of all property." The court further stated that at trial, it gave the parties multiple opportunities to settle, encouraged the parties to settle, and again informed the parties that the property would be sold at an auction in the absence of a settlement agreement. The court pointed out that the parties did not request a continuance of the trial to give them time to finalize a settlement agreement and did not complain about technological issues or a language barrier. The court cited "[j]udicial economy, [and] the need for finality of an action that is over two (2) years old and still taking up space on the [c]ourt['s] docket." The court also noted that approval of the settlement agreement would promote

future litigants to "roll the dice, have a trial, see what the decision is and if [they] don't like it, [they] will negotiate afterwards."

On June 5, the court entered the divorce decree, ordering that the property be auctioned and the proceeds equally divided. The court also ordered that the auction order be modified to include the second vehicle. On June 6, Juan appealed the May 23 order and the decree.

On appeal, Juan argues that the circuit court abused its discretion by denying his motion to approve the settlement and to vacate the auction order. He argues that public policy favors settlement agreements, parties can settle at any time, and courts have a duty to encourage settlement agreements. He additionally claims that the court's recognition of the settlement agreement would prevent a miscarriage of justice given that the auction would result in major economic loss to both him and Lucilla.

The law is well settled that, although divorcing spouses may enter into settlement agreements, the court is not bound to accept them, even in the absence of fraud or coercion. *Walls v. Walls*, 2014 Ark. App. 729, at 4, 452 S.W.3d 119, 122 (holding that the circuit court acted within its discretion in disregarding the parties' marital dissolution agreement); *Rutherford v. Rutherford*, 81 Ark. App. 122, 98 S.W.3d 842 (2003) (holding that the circuit court acted within its discretion in rejecting the parties' property settlement agreement and ordering that their property be auctioned). It is within the sound discretion of the circuit court to approve, disapprove, or modify the agreement. *Rutherford*, 81 Ark. App. 122, 98 S.W.3d 842. Further, a circuit court has an obligation to manage and control its docket in

an efficient manner. *Frost v. Frost*, 2009 Ark. App. 290, 307 S.W.3d 41 (2009) (reviewing the circuit court's decision on the denial of a continuance). It is crucial to our judicial system that circuit courts retain the discretion to control their dockets. *Id.*

In this case, we hold that the circuit court acted within its discretion in denying Juan's motion to approve the settlement agreement and vacate the auction order. The divorce case had been pending since 2021. At the February 2024 pretrial hearing, the court advised the parties that their failure to reach a settlement agreement before trial would result in a sale of their property. At the April 16 trial, the court encouraged the parties to settle, and it provided the parties multiple opportunities to settle. The court again advised the parties that the property would be auctioned in the absence of a settlement, and it stated that a subsequent settlement agreement would not be considered. Both parties testified and acknowledged that their property would be auctioned, and they did not request a continuance. However, they waited until May 10 to tender their settlement agreement. Given these circumstances, we find no error by the circuit court.

Affirmed.

THYER and MURPHY, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*; and *Peel Law Firm, P.A.*, by: *John R. Peel*, for appellant.

One brief only.